JUDGE PAULEY

14 CV 4477

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

YITSCHAK GOLDSTEIN

                                Civil Action No.

                 Plaintiff,

    -against-

ABRAHAM JOSEPH, NOCHUM FRIEDMAN,       **COMPLAINT**
SIMAN TOV ASSOCIATES,
KY MOTEL, KYM LAD LLC,
KJ ACRES, LLC, STEVEN MILLIGRAM,
VILLAGE OF MONROE, and JOHN DOE #1
through #10,

                    Defendants.    **JURY TRIAL DEMANDED**
-------------------------------------------------------------x

Plaintiff, YITSCHAK GOLDSTEIN, appearing pro se, as and for his complaint against the defendants, respectfully alleges as follows:

## THE PARTIES

      1.     The Plaintiff YITSCHAK GOLDSTEIN ("Plaintiff"), is above the age of eighteen years, and is domiciled at 131Acres Road, Unit 201, Monroe, New York 10950.

      2.     The Defendant ABRAHAM JOSEPH ("JOSEPH") is a person over the age of 18 years, and resides at 50 Satmar Drive, Monroe, New York 10950.

3.     The Defendant NOCHUM FRIEDMAN ("FRIEDMAN") is a person over the age of 18 years, and resides at 82 Forest Road, Monroe, New York 10950.

4.     The Defendant SIMAN TOV ASSOCIATES, ("SIMAN TOV") upon information and belief is a d/b/a or other entity associated with Defendants JOSEPH, and FRIEDMAN, and maintains an office at 49 Forest Road, Monroe, New York 10950.

5.     The Defendant SIMAN TOV LLC, upon information and belief is a d/b/a or other entity associated with Defendants JOSEPH, and FRIEDMAN, and maintains an office at 49 Forest Road, Monroe, New York 10950.

6.     Upon information and belief Defendant SIMAN TOV LLC is a New York Limited Liability Company.

7.     Upon information and belief Defendant SIMAN TOV LLC is a New York Limited Liability Company.

8.    Upon information and belief Defendant SIMAN TOV LLC transacts business in the state of New York, County of Orange.

9.    Upon information and belief Defendant SIMAN TOV LLC maintains an office at, and/or conducts business out of 50 Satmar Drive, New York 10950.

10.    Upon information and belief Defendant Joseph is a principal, and/or agent, and/or owner, and/or officer and/or employee of the Defendant SIMAN TOV LLC.

11.    The Defendant KY MOTEL is believed to be a legal entity registered in the State of California and maintains an address at 11173 Ocotillo Road, Desert Hot Springs, California 92240.

12.    The Defendant KY MOTEL transacts business in the State of New York, and sometimes receives mail at Post Office Box 728, Monroe, New York 10950.

13.     Upon information and belief Defendants Joseph and Friedman are principals, and/or agents, and/or owners, and/or officers and/or employees of the Defendant KY MOTEL.

14.     Upon information and belief, at times during the past 10 years Defendants Joseph and Friedman conducted together business under the name of KY MOTEL.

15.     The Defendant KYM LAD LLC  is believed to be a legal entity registered in the State of New York, and maintains an address at 82 Forest Road, Monroe, NY 10950.

16.     Upon information and belief Defendants Joseph and Friedman are principals, and/or agents, and/or owners, and/or officers and/or employees of the Defendant KYM LAD LLC .

17.     Upon information and belief, at times during the past 10 years Defendants Joseph and Friedman conducted together business under the name of KYM LAD LLC.

18. Upon information and belief Defendant KJ Acres LLC ("KJ Acres") is a New York Limited Liability Company.

19. The Defendant KJ Acres transacts business in the State of New York.

20. Upon information and belief Defendant KJ Acres maintains an office or address at 82 Forest Road, Monroe, New York 10950.

21. Upon information and belief, that at times during the past nine years, Defendants Joseph and Friedman were principals, and/or agents, and/or owners, and/or officers and/or employees of the Defendant KJ Acres.

22. Upon information and belief Defendant KJ Acres is currently owned, and controlled by Defendant Friedman, its sole member.

23. The Defendant STEVEN MILLIGRAM ("Judge Milligram") is a person over the age of 18 years, and maintains an office at One Corwin Court, Newburgh, New York 12550.

24.     The Defendant VILLAGE OF MONROE is a legal entity with an address at 7 Stage Road, Monroe, New York 10950.

25.     The Defendants JOHN DOE #1 through #10 are is a person over the age of 18 years, and resides at fictitious names representing persons of both gender, above the age of 18 years, whose real names are currently unknown to Plaintiff, and who are believed to have aided and abetted the herein defendants in the allegations herein described.

26.     The claims alleged herein arise in connection with Defendants JOSEPH, FRIEDMAN, SIMAN TOV, KY MOTEL, and KJ ACRES having engaged in a concerted,  multi level artifice, over a period of approximately ten years,  which included a repeated pattern of crimes, including mail fraud, which targeted  Plaintiff, with the aim and intent *inter alia* to defraud him of hundreds of thousands of dollars and to rob him of his rights to certain real property, to wit, a parcel known as Unit 201, located at 131Acres Road in Monroe, New York, which was legally converted to a condominium during about March 2009 ("subject premises").

27.     Plaintiff seeks monetary and equitable relief, as well as injunctive relief and all other appropriate remedies to which he is entitled under United States and New York law.

28.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to Plaintiff's claims arising under the laws of the State of New York.

29.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 in that a substantial part of the events giving rise to Plaintiff's claims occurred in Orange County, New York.

30.     In July 2004, Defendants Joseph and Friedman jointly held title to the entire premises known as 131Acres Road in Monroe, New York, a building structure consisting of four apartments, a sub-ground level apartment, and three separate units above ground.  At that time the said premises was not yet a legalized for condominiums.

31.    In June 2004, the apartment unit referred to herein as Unit 201 or subject premises was in disrepair and uninhabitable.

32.    In June 2004, Defendants Joseph and Friedman, acting in concert and conspiracy, and with intent to rob and cheat Plaintiff falsely misrepresented to Plaintiff that Unit 201, located at 131 Acres Road in Monroe, New York, was a legal condominim, and that the sale price is $250,000.00.

33.    To induce Plaintiff to enter into a purported purchase contract agreement regarding the falsely represented unit 201, Defendant Joseph, acting in concert and conspiracy with Defendant Friedman offered Plaintiff that if he would leave a down paymet of $4,000 and undertake to renovate, repair and make habitable the premises, which cost  was no less than approximately $50,000.00, and agree to pay off the balance of $196,000.00 remaining,  the purported sale of unit 201 would be finalized.

34.    To make matters more enticing, Defendant Joseph, acting in concert and conspiracy offered arrangements for Plaintiff to pay off the $196,000.00 balance by means of a purported self-amortizing purchase money mortgage, and where Plaintiff, if in agreement with the terms, would be paying

monthly "mortgage payments" in the amount of $1400.00 to Defendant Joseph, acting in concert and conspiracy with Defendant Friedman.

35.    Plaintiff, in reliance upon the misrepresentations made by Defendant Joseph, tendered to Defendant Joseph, who was acting in concert and conspircy with Defendant Friedman, the sum of $4,000.00.

36.    Plaintiff, in reliance upon the misrepresentations made by Defendant Joseph, spent no less than $50,000.00 in repairs and renovations to bring unit 201 to a habitable state.

37.    Beginning approximately October 2004, Plaintiff, in reliance upon the misrepresentations made by Defendant Joseph, tendered montly "mortgage" payments in the amount of $14,00.00 to Defendant Joseph, who accepted same while acting in concert and conspiracy with Defendant Friedman.

38.    As part of the scam conducted in concert by Defendants Joseph and Friedman, Plaintiff never received any officially written contract or other official evidence from Defendant Joseph relating to the aforementioned purchase

arrangements, despite having demanded of him that he provide Plaintiff with such proof of purchase.

39.     Subsequent to Plaintiff having repaired and renovated the subject premises at a cost of over $50,000.00, which included $41,000.00 to a contractor and $9,000.00 in related costs, Plaintiff was advised that the subject premises was not a legally approved condeminium, and that no condiminium conversion was even in the process.

40.     When Plaintiff confronted Defendant Joseph of the misrepresentation, Defendant Joseph, while acting in concert and conspiracy with Defendant Friedman, responded that it doest matter; the conversion will very soon take place and as long as Plaintiff continues to make his monthly "mortgage payments", Plaintiff will receive title ownership to unit 201.

41.     For the next approximate four years Plaintiff was continuously assured by Defendant Joseph that he is working with lawyers to make a condominium conversion, and that as soon as there is a conversion Plaintiff will receive title to the subject premises.

42.     Plaintiff had been falsely advised by Defndant Joseph that defendnat Friedman too was a purchaser, having purchased the unit upstairs from Plaintiff, and that there is nothing to be worried or concerned over.

43.     Plaintiff was additionally advised by Defendant Joseph that another neighbor living upstairs from the subject premises was likewise a condominium purchaser.

44.     As part of the fraud scam on the part of Defendants Joseph and Friedman, during about June 2008, Plaintiff was advised by Defendant Friedman that he had purchased from Defendant Joseph the subject premises, and that in order for Plaintiff to continue residing in the subject premises he will be required to pay an additional $400 per month as rent.

45.     As a result of Defendant Friedman's claim to have purchased the subject premises a dispute ensued between Plaintiff and Defendant Friedman, and where Defendant Friedman, acting in concert and conspiracy with Defendant Joseph, subsequently pushed the matter to a rabbinical court arbitration.

46.     An arbitration proceeding between Defendant Friedman and Plaintiff was held during the summer of 2008.

47.     At the arbitration proceeding Defendant Friedman, acting in concert and conspiracy with Defendant Joseph, was careful not to disclose to the arbitrtor that he is a partner with Defendant Joseph dating back from before 2004, and that he was fully privy to all the terms and arrangments that were made between Defendant Joseph and Plaintiff in the 2004 agreement to sell the subject premises to Plaintiff.

48.     Instead, Defendant Friedman, acting in concert and conspiracy with Defendant Joseph, made himself falsely appear as a recent arms length purchaser of the subject premises with no knowledge of the arrangment that had existed prior thereto between Defendant Joseph and Plaintiff.

49.     At the arbitration proceeding Defendant Friedman falsely insisted *inter alia* that he had no knowledge of the exorbatent monies Plaintiff spent in renovating the subject premises to transform same from an uninhabitable unit to a habitable apartment.

50.     At the said arbitration, Plaintiff demanded that Defendant Joseph was a necessary party and that he must also participate at the arbitration as a party.

51.     The arbitrators on the insistance of Defendant Friedman that he was a new purchaser, refused to adhere to Plaintiff, and did not mandate that Defendant Joseph appear as a party, or even as a witness, to arbitration proceeding.

52.     In September 2008, the arbitrators ruled that there was no evidence of any purchase of the premises on the part of Plaintiff and therefore Friedman is the landlord and that there exists a landlord-tenant relationship between Defendant Friedman and Plaintiff.

53.     Clearly, the Defendant Friedman, an owner and partner in the premises pre-2004, had well duped the arbitrators by claiming he was a new purchaser of the premises.

54.     In essence, Defendants Joseph and Friedman, in their endeavoring to defraud Plaintiff via the aforesaid arbitration proceeding, rewrote

their deal with Plaintiff, and changed the staus of the herein Plaintiff from that of oral-contract vendee in possession to that of tenant in possession.

55.    In accordance with the arbitration ruling of September 2008, finding the existance of a landlord-tenant relationship, Defendants Joeph and Friedman are liable to Plaintiff for the costs of all the repairs and renovations made by Plaintiff to the subject premises from the summer of 2004 until at least September 2008, under the Doctine of Implied Warranty Of Habitability.

56.    Even in the absence of the aforesaid doctrine, or even where said doctrine would not be applicable, Defendants Joseph and Friedman are still liable to Plaintiff for his full renovation to the subject premises, as Plaintiff acted regarding the repairs and renovations on their directive.

**IN FURTHERANCE OF THE FRAUD SCAM**

57.    On or about December 29, 2008, in furtherance of their scheme to defraud Plaintiff, Defendant Friedman, acting in concert and conspiracy with his partner Defendant Joseph , appeared at the subject premises on or about late December 2008 without an appointment and without any lawyer.  Friedman stood

in my dining room and presented me with a written contract dated December 29, 2008 to sign, for the sale of the subject premises.

58.    Defendant Friedman assured Plaintiff that by signing the written contract of December 29, 2008, it would lead to him obtaining title to the subject premises as a legal condominium.

59.    Immediately after we both signed, and despite my objections, Friedman confiscated the contract from out of my hands while promising in a most assuring manner he was going to return it to me after he makes for himself a copy.

60.    The contract when presented to me for signature had already been signed by Joseph on behalf of his company or d.b.a. Defendant Siman Tov Associates, as one of two sellers of the subject premises.

61.    As part of the scam, I was never provided an opportunity to be represented by an attorney at the signing of the contract.

62.     Upon information and belief, Friedman and Joseph had retained an attorney to draft, modify, and submit the contract to the office of the Attorney General.

63.     At some between the time subsequent to Defendant Friedman having confiscated the aforesaid written contract and about March 2009, Defendant Friedman and/or Defendant Joseph and/or their agents, acting without the knowledge and/or consent of Plaintiff did modify certain aspects of the said written contract dated December 29, 2008.

64.     In accordance with the terms of the contract, upon issuance of a non-contest letter Plaintiff was obligated to make a down payment of $17,000.00 to sellers.

65.     The said contract explicitly acknowledges that Respondent as buyer resides in the subject premises.  Accordingly, Respondent is a contract vendee in possession.

66.     Moreover, ¶ 22 of the aforesaid contract states in pertinent part:

**"all prior understandings and agreements between seller and purchaser are merged in this contract. It completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract."**

67.     In accordance with the abovementioned ¶22, all Plaintiff's obligations as contract vendee in possession are set forth in the contract. Clearly, the contract does <u>not</u> obligate Plaintiff to pay any amount of rent whatsoever to Defendant Friedman.

68.     Moreover, the aforesaid contract is entirely silent as to the arbitration ruling of September 2008, thereby mooting same for all purposes moving forward.

69.     Under the terms of the aforesaid written contract of sale, Plaintiff was no longer a tenant in possession but a contract vendee in possession.

70.     Plaintiff, naively trusting the premises would be conveyed in the near future, at that time believed to be practical to begin paying in advance and on account ten percent of the down payment, or $1,700.00 each month.

71.     To date, and before taking any other entitled reductions and credits, Plaintiff has made at least 36 such installments of $1,700.00 each on account toward the purchase price.

72.     During the first three or four months in 2009 Defendant Friedman kept promising Plaintiff that he would be returning the back his original contract.  Defendant Friedman never returned Plaintiff the original or any copy of that contract despite Plaintiff continuously demanding that he do so.

73.     As part of the Friedman-Joseph fraud scam, I was made to believe by Friedman at the time of my signing the contract in December 2008 that my apartment was going to be converted to a condominium through a mutually hired lawyer, and not through the office of the New York State Attorney General.

74.     Then at some time during about May or June 2009, in furtherance of his intent to mislead me and defraud me of my property rights,

Defendant Friedman falsely advised me that he had given the aforesaid written contract to an attorney to check it out and was advised that we cannot legally convert to condominiums at this time, but that he (Defendant Friedman) will endeavor to find another attorney with more experience about condominiums and he and Plaintiff herein will together make a new contract and go together to such lawyer.

75.     As part of the scam, Plaintiff was made to believe by about mid-2009 by Defendant Friedman that he had physically destroyed the original contract, but that the same seller-buyer relationship still existed and that he and Plaintiff would be drafting another contract in the near future for presentation to an experienced lawyer, with the same terms included therein less any installments already paid on account.

76.     By or about November 2011, Plaintiff realized that Defendant Friedman had conned him and ceased making any further down payments on account of the purchase.

77.     On or about March 2013, after more than fifteen months of arguing between Defendant Friedman and Plaintiff, and after which time

Defendant Friedman felt fully confident and assured that Plaintiff is entirely

ignorant as to the existence of the contract dated December 29, 2008, Friedman

acting through Defendant KJ Acres as the Petitioner commenced an eviction

proceeding at the Justice Court, Town of Monroe, before Judge Milligram.


78.     At about the same time, Defendant Friedman again took

Plaintiff herein to arbitration.  Defendant Friedman, with intent to further defraud

Plaintiff, boldly denied to the arbitrator having ever entered into any contract of

sale relating to the subject premises.  Plaintiff had no proof to support his position

because Defendant Friedman had fraudulently confiscated his contract at the end of

2008 and refused to return it.


79.     Plaintiff again insisted that he wanted to bring Defendant

Joseph as a witness, but the arbitrator denied Plaintiff that right.


80.     Likewise, Plaintiff was denied by the arbitrator the right to legal

counsel to represent him  at the proceeding.


81.     The arbitrator during about March 2013 issued a ruling limited

only to reconfirming the previous arbitration ruling of September 2008, and set

forth the reason for the ruling being that Plaintiff is not a purchaser of the subject premises.

82.     The arbitrator issued a decision that never addressed or made any final decision to resolve the controversy originally presented thereto.

83.     While Plaintiff may find it acceptable to confirm that he was a tenant during the time prior to September 2008, that second arbitration ruling of 2013, despite being invalid on its face, did not touch or affect the validity of the December 29, 2008 contract in any fashion, or Plaintiff's current status as a contract vendee in possession.

84.     Defendant KJ Acres acting through Defendant Friedman, believing confidently that the contract of December 29, 2008 would never be discovered, repeatedly affirmed before the Justice Court, with the intent to pull a fraud on that Court and to defraud Plaintiff, that Plaintiff was residing in the subject premises as a month to month tenant and that Plaintiff was obligated under a landlord-tenant relationship to pay rent at the rate of $1,700.00 per month, and that Plaintiff was in default of those monthly rent payments.

85.    Defendant KJ Acres, the Petitioner at the Justice Court, acting through Defendant Friedman, falsely and perjuriously, and with intent to defraud, denied to the Justice Court throughout the instant case the existence of, or knowledge of, any written contract-agreement whatsoever with the therein Respondent., the herein Plaintiff.

86.    In furtherance of the fraud scam, the Petitioner therein (Defendant KJ Acres) sought to commit further grand larceny by demanding that the Justice Court issue a money judgment against Plaintiff herein in excess of $50,000.00.

87.    Moreover, a perjurious Affirmation submitted on behalf of Petitioner (Defendant KJ Acres), and titled "In Opposition To Respondent's Motion To Dismiss Proceeding", dated December 4, 2013, containing a barrage of deliberately false representations of material facts were  made to the Justice Court in support of the fraud scam.

88.    In common resemblance with the aforesaid perjurious Affirmation, the Justice Court record, dated December 4, 2014, reflects similar

false representations by Defendant KJ Acres relating to the contract of sale with Plaintiff herein.

89.    The entire Justice Court file is filled with numerous falsified statements made by Defendant KJ Acres and its agents, denying there ever existed any written contract whatsoever relating to the sale of the subject premises to Plaintiff herein.

90.    Plaintiff's counsel moved at the Justice Court, before Judge Milligram for dismissal of the action on the grounds *inter alia* that the Justice Court lacked subject matter jurisdiction, for respondent (Plaintiff herein) is a contract vendee in possession and not a tenant.

91.    On December 4, 2013, at the Justice Court, Judge Milligram presiding, although the Plaintiff insisted truthfully that he was not a tenant but a contract vendee in possession, but because Defendant Friedman had fraudulently confiscated the written contract dated December 29, 2008 and never returned it, Plaintiff had no sufficient documentary evidence to prove his possession.

92.     On December 4, 2013, Judge Milligram stating on that Justice Court record, the Plaintiff's position is unsupported by a contract of sale, and thereby induced the Plaintiff to enter into a payment stipulation, where the payments would be made in escrow with attorney for herein Defendant KJ Acres.

93.     Under the conditions presented by Judge Milligram on his court record of December 4, 2013, if Plaintiff were to refuse he and his family of nine children, and pregnant wife would be ordered evicted from the premises forthwith.

94.     Under the duress of receiving an order of eviction against him and his family of nine children and pregnant wife, Plaintiff herein agreed on the record to make the payments.

95.     Thereafter, a certain community activist named Menachem Blum, contacted the office of the New York State Attorney General hoping to find some fraudulent representations made by Defendants Joseph and Friedman. Surprisingly, the Attorney General's office sent back a letter with the contract dated December 29, 2008.

96.     Subsequently, Plaintiff submitted a show cause, pursuant to CPLR §5015(a)(2)(3) to the Justice Court of Defendant Village of Monroe, for signature to Judge Milligram, seeking vacatur of the December 4, 2013 stipulation based on newly discovered evidence, to wit, the existence of the contract dated December 29, 2013, and which shows beyond the shadow of a doubt that Defendants Friedman and KJ Acres had committed a fraud of the court and on Plaintiff herein.  Plaintiff sought a stay of enforcement of the aforementioned stipulation and a stay of the eviction.

97.     Plaintiff gave sufficient notice in advance to counsel for Defendant KJ Acres of his intent to seek a stay at the Justice Court.

98.     The parties represented by counsel both appeared at the Justice Court before Judge Milligram on Wednesday, May 28, 2014.

99.     Judge Milligram was upset that Plaintiff had truthfully referred to Defendant Friedman and his attorney as being a con artist.  Judge Milligram showed no problem with the acts of fraud perpetrated on his court or against the Plaintiff; only he found it disgraceful to refer to the perpetrators by the term that describes them for what they are and deserve to be called.

100.   Judge Milligram denied the show cause on the record, but refused to sign any paper reflecting his denial.

101.   By Judge Milligram refusing to sign his denial of the Plaintiffs' show cause, he deprived Plaintiff of his constitutional right of due process.

102.   In the absence of a signed paper from Judge Milligram denying Plaintiffs show cause, Plaintiff had no recourse for seeking a stay at the Appellate Term.

103.   Judge Milligram deprived Plaintiff of the basic civil rights provided him as a citizen of the United States.

104.   Judge Milligram subsequently signed his denial of the show cause after plaintiff complained to the Administrative Judge.

105.   Judge Milligram, knew that in view of the contract dated December 29, 2008, the Justice Court had no subject matter jurisdiction.

106.   Judge Milligram acted outside his jurisdiction.


107.   Judge Milligram additionally violated a 14-day Bankruptcy Court stay that was still in place when he signed an order of eviction against Plaintiff a week prior to the May 28, 2014 appearance.


108.   As a result of Judge Milligram refusing to issue his denial in writing Plaintiff and his family were caused undue stress and aggravation.


109.   Defendants Joseph and Friedman acted together as an association in fact though not a legal entity RICO type enterprise when repeatedly over ten years they sought to fraud and rob Plaintiff of money and real property rights.


110.   Every month beginning July 2008 Defendant Friedman, acting in concert and conspiracy, utilized the United States mails in pursuing his fraud scam against plaintiff.

111.   Defendant Friedman repeatedly used Defendant KY Motel, an entity operating out of state for the purpose of fraudulently billing Plaintiff for his false rent demands.

112.   In June 2004, Defendant Joseph reached Plaintiff, who then resided in Canada, by means of false advertising that reached Canada at that time.

113.   Defendant Friedman and Joseph are liable for treble damages to Plaintiff for their violations of the civil RICO statute.

114.   Defendant Friedman and Joseph are liable for causing Plaintiff emotional stress and suffering.

115.   Defendant Friedman and Joseph are liable for punitive damages.

WHEREFORE, for all the reasons set forth hereinabove Plaintiff seeks treble  damages against Defendants Abraham Joseph,  Nochum Friedman, KJ Acres, KY Motel, Siman Tov Associates; and seeks injunctive relief against Judge

Steven Milligram as this Court sees just and proper; and for any other relief that his

Court deems just and proper.


Dated: June 20, 2014


YITSCHAK GOLDSTEIN

131 Acres Road
Unit 201
Kiryas Joel
Monroe, New York 10950
(845) 783-4480