UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _____ 9/22/14

------------------------------------------------------------x

YITSCHAK GOLDSTEIN,

                            **Plaintiff,**

       -against-

ABRAHAM JOSEPH, NUCHEM FRIEDMAN,
SIMON TOV LLC, SIMON TOV ASSOCIATES,
KJ ACRES LLC, KYM LAD LLC, KY MOTEL,
131 ACRES RD CONDOMINIUM, a/k/a 131
ACRES RD CONDO, JOSEPH KUNSTLINGER,
JOSEPH KUNSTLINGER P.C., COHEN
LABARBERA LANDRIGAN LLP,
RONALD J. COHEN, STEPHEN P. LABARBERA,
STUART THALBLUM, THOMAS C. LANDRIGAN,
STEVEN MILLIGRAM, ASHEL BEAR SHEVA LLC,
and JOHN DOE #1 through #10,

                      **Defendants,**

      -and-

ATTORNEY GENERAL OF THE STATE
OF NEW YORK, ABRAHAM SRUGO,
YOSSI'S CAFE & RESTAURANT INC.,

                 **Relief Defendants.**

------------------------------------------------------------x

Civil Action No.
14-cv-4477

**FIRST
AMENDED
COMPLAINT**

**<u>JURY TRIAL
DEMANDED</u>**

SEP 2 2 2014

PRO SE OFFICE

Plaintiff, YITSCHAK GOLDSTEIN, appearing pro se, as and for his complaint against the defendants, respectfully alleges as follows:

    1. The herein civil action arises under the laws of the United States,

alleging claims for violation of (i) 18 U.S.C. 1962(c) and (d) ("RICO"), (ii) 42 U.S.C.

1983 and 1985 ("Civil Rights"), and (iii) New York State causes of action.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331, because this is a civil action arising under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 with respect to Plaintiff's claims arising under the laws of the State of New York.

3. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and 18 U.S.C. §1965 in that a substantial part of the events giving rise to Plaintiff's claims occurred in Orange County, New York.

4. Plaintiff seeks monetary and equitable relief, as well as injunctive relief and all other appropriate remedies to which he is entitled under United States and New York State laws.

## THE PARTIES

5. The Plaintiff YITSCHAK GOLDSTEIN ("Plaintiff"), is above the age of eighteen years, and is domiciled at 131 Acres Road, Unit 201, Monroe, New York 10950.

6. The Defendant ABRAHAM JOSEPH ("JOSEPH") is a person over the age of 18 years, and resides at 49 Keep Street, Brooklyn, New York 11211.

7. The Defendant NUCHEM FRIEDMAN ("FRIEDMAN") is a person over the age of 18 years, and resides at 82 Forest Road, Monroe, New York 10950.

8. The Defendant SIMON TOV ASSOCIATES, ("SIMON TOV") upon information and belief is a d/b/a or other entity associated with Defendants JOSEPH, and FRIEDMAN, and maintains an office at 82 Forest Rd. Satmar Drive, Monroe, New York 10950.

9. The Defendant SIMON TOV LLC, ("SIMON LLC") upon information and belief is a is a New York Limited Liability Company associated with Defendant JOSEPH, and maintains an office at 50 Satmar Dr., Monroe, New York 10950.

10. Upon information and belief Defendant Joseph is a principal, and/or agent, and/or owner, and/or officer and/or employee of the Defendant SIMON LLC.

11.     The Defendant KY MOTEL is believed to be an unregistered entity, believed to maintain an address at 11173 Ocotillo Road, Desert Hot Springs, California 92240.

12.     The Defendant KY MOTEL transacts business in the State of New York, and sometimes receives mail at Post Office Box 728, Monroe, New York 10950.

13.     Upon information and belief Defendant Friedman is associated as a principal, and/or agent, and/or owner of the Defendant KY MOTEL.

14.     Upon information and belief, at times during the past 6 years Defendant Friedman conducted certain business under the name of KY MOTEL.

15.     Upon information and belief Defendant KYM LAD LLC ("KYM LAD") is associated as a principal, and/or agent, and/or owner of the Defendant KY MOTEL.

16.     The Defendant KYM LAD is believed to be a legal entity registered in the State of New York, and maintains an address at 82 Forest Road, Monroe, NY 10950.

17.     Upon information and belief Defendant Friedman is a principal, and/or agent, and/or owner of the Defendant KYM LAD.

18.     Upon information and belief, at times during the past 6 years Defendant Friedman conducted certain business under the name of KYM LAD.

19.     Upon information and belief Defendant KJ Acres LLC ("KJ Acres") is a New York Limited Liability Company.

20.     The Defendant KJ Acres transacts business in the State of New York.

21.     Upon information and belief Defendant KJ Acres maintains an office or address at 82 Forest Road, Monroe, New York 10950.

22. Upon information and belief Defendant KJ Acres, during the past four years is/was owned, and controlled by Defendant Friedman, its sole member.

23. The Defendant 131 ACRES RD CONDOMINIUM ("131 CONDO") a/k/a/ 131 ACRES RD COONDO upon information and belief is a is a New York entity associated with Defendants JOSEPH, and FRIEDMAN, with an address at 131 Acres Rd, Monroe, New York 10950.

24. The Defendant Joseph Kunstlinger ("Kunstlinger") is a person over the age of 18 years, and upon information and maintains an address at 235 North Main Street, Suite 2, Spring Valley, New York 10977-4014.

25. The Defendant Joseph Kunstlinger P.C. ("Kunstlinger P.C.") is believed to be a New York State corporation with an address at 235 North Main Street, Suite 2, Spring Valley, New York 10977-4014.

26. The Defendant STUART THALBLUM ("THALBLUM ") is a person over the age of 18 years, and maintains an office at 40 Matthews Street, Suite 203, Goshen, New York 10924.

27. The Defendant RONALD J. COHEN ("COHEN") is a person over the age of 18 years, and maintains an office at 40 Matthews Street, Suite 203, Goshen, New York 10924.

28. The Defendant STEPHEN P. LABARBERA ("LABARBERA") is a person over the age of 18 years, and maintains an office at 40 Matthews Street, Suite 203, Goshen, New York 10924.

29. The Defendant THOMAS C. LANDRIGAN ("LANDRIGAN") is a person over the age of 18 years, and maintains an office at 40 Matthews Street, Suite 203, Goshen, New York 10924.

30. The Defendant COHEN, LABARBERA, LANDRIGAN, LLP ("Cohen Group") upon information and belief is a New York State Limited Liability Partnership, and maintains an office at 40 Matthews Street, Suite 203, Goshen, New York 10924.

31.     The Defendant STEVEN MILLIGRAM  ("Milligram") is a person over the age of 18 years, and maintains an office at One Corwin Court, Newburgh, New York 12550.

32.     The Defendant Milligram is sued here in both his official & individual capacity for declaratory and injunctive relief.

33.     The Defendant ASHEL BEAR SHEVA LLC ("ASHEL BEAR") upon information and belief is a is a New York Limited Liability Company associated with Defendant FRIEDMAN, and maintains an office at P.O. BOX 728, New York 10949.

34.     The Defendant ASHEL BEAR upon information and belief is an owner of 131 Acres Road, Unit 111, Monroe, NY, 10950.

35.     Upon information and belief Defendant Friedman is a principal, and/or agent, and/or owner of the Defendant ASHEL BEAR.

36.     The Defendants JOHN DOE #1 through #10 represent a person or persons of either gender, over the age of 18 years that are currently unknown at

this time to Plaintiff, and believed to have assisted the herein defendants in furtherance of the allegations herein described.

37.     The Relief Defendant ATTORNEY GENERAL OF THE STATE OF NEW YORK, ("AG") maintains an office at 120 Broadway, New York, New York, 10271.

38.     Relief Defendant AG is currently believed to be an innocent third party and is not accused in this action of any wrongdoing.

39.     The Relief Defendant ABRAHAM SRUGO ("SRUGO")  is a person over the age of 18 years, and resides at 131 Acres Road, Monroe, New York, 10950.

40.     The Relief Defendant SRUGO upon information and belief is an owner of 131 Acres Road, Unit 301, Monroe, New York, 10950.

41.     Relief Defendant SRUGO is currently believed to be an innocent third party and is not accused in this action of any wrongdoing.

42.     However, it is alleged upon information and belief that the Relief Defendant Srugo may be legally entitled to certain property rights that he may not be aware of despite having paid valuable consideration for same to Defendants Joseph and Friedman, and that Plaintiff has a legitimate monetary claim against a portion of the proceeds of that certain property rights, and seeks herein declaratory and injunctive relief to protect his rights to that monetary claim.

43.     The Defendant YOSSI'S CAFE & RESTAURANT INC. ("YOSSI'S") upon information and belief is a New York General Corporation, and maintains an office at 131 Acres Road, Monroe, New York 10950.

44.     The Defendant YOSSI'S upon information and belief conducts business as a pizza restaurant store at 131 Acres Road, Monroe, New York 10950.

45.     Relief Defendant YOSSIS'S is currently believed to be an innocent third party and is not accused in this action of any wrongdoing.

46.     The claims alleged herein arise in connection with Defendants JOSEPH, FRIEDMAN, SIMON LLC, SIMON TOV , KJ ACRES, KYM LAD, KY MOTEL, 131 CONDO, KUNSTLINGER, KUNSTLINGER P.C., COHEN GROUP , COHEN, LABARBERA, LANDRIGAN, THALBLUM, MILLIGRAM,

and ASHEL BEAR (collectively RICO Defendants"), all of whom acted jointly and severally, while directly engaged in a concerted effort to further and promote a multi-level artifice, that spread over a period of approximately ten years, beginning August 2004, which included during that time the said defendants committing a repeated pattern of civil and criminal RICO crimes, which include mail fraud, wire fraud, extortion, and Bankruptcy Court fraud, although not limited to only federal R.I.C.O. violations, and having willfully targeting Plaintiff with the common aim, goal and intent *inter alia* to damage, aid and assist, with endeavoring to cause Plaintiff to be defrauded in value of hundreds of thousands of dollars, and to cause Plaintiff, via employing a state official, to be deprived of certain of his civil rights guaranteed to him under the United States Constitution, and to also deprive Plaintiff of certain of his rights to certain real property, to wit, a parcel known as Unit 201 (the "premises") , located at 131 Acres Road in Monroe, New York (the "subject address"), which premises was legally converted to a condominium or was legally approved for conversion to a condominium, during about March 2009.

47.     Defendants JOSEPH, FRIEDMAN, SIMON LLC, SIMON TOV , KJ ACRES, KYM LAD, KY MOTEL, 131 CONDO, KUNSTLINGER, KUNSTLINGER P.C., COHEN GROUP , COHEN, LABARBERA, LANDRIGAN, THALBLUM, MILLIGRAM, and ASHEL BEAR, acted repeatedly together as an association in fact though not a legal entity, with the common aim and goal to assist, aid and abet the furtherance of the aforementioned artifice to endeavor to defraud plaintiff of monetary value worth hundreds of thousands of dollars, as well as to loose actual money, and the loss of certain of his rights in the aforementioned subject premises, via interstate connections and activities, while repeatedly employing use of the United States mail, acts of extortion, and fraud on the Bankruptcy Court, constituting a RICO type enterprise.

48.     In June 2004, Defendants Joseph and Friedman jointly held title to the entire premises known as 131 Acres Road in Monroe, New York, a building structure consisting of three residential apartments, and a ground level basement, sometimes referred to herein as "sub basement". At that time the said premises was not yet a legalized for condominiums.

49.     Upon information and belief, the building where the premises is located is exclusively intended for residential use only, with no legal right for commercial usage.

50.     In June 2004, the apartment unit referred to herein as Unit 201 or subject premises was in total disrepair and uninhabitable.

51.     In June 2004, Defendants Joseph and Friedman, acting in concert and conspiracy, and with intent to rob and cheat Plaintiff falsely misrepresented to Plaintiff that Unit 201, located at 131 Acres Road in Monroe, New York, was a legal condominium, and that the sale price is $250,000.00.

52.     In June 2004, to induce Plaintiff to enter into a purported purchase contract agreement regarding the falsely represented unit 201, Defendant Joseph, acting in concert and conspiracy with Defendant Friedman offered Plaintiff that he must first leave a down payment of $4,000, and undertake to renovate, repair and make habitable the premises, which cost was no less than approximately $50,000.00, and must also agree to pay off the balance of $196,000.00 remaining by making purported mortgage and tax payments, as explained further below.

53.     During about June 2004, Defendant Joseph, acting in concert and conspiracy with Defendant Friedman, falsely assured Plaintiff that if he would leave a down payment of $4,000.00, and undertake to renovate, repair and make habitable the premises, which cost was no less than approximately $50,000.00, and also agree to pay off the purported balance of $196,000.00 remaining by making purported mortgage and tax payments, as explained below, then the purported sale of unit 201 would be finalized in Plaintiff's favor.

54.     To make matters more enticing, during about June 2004, Defendant Joseph, acting in concert and conspiracy offered an arrangement for Plaintiff to pay off the $196,000.00 purported purchase price balance by means of a purported self-amortizing purchase money mortgage at 4% interest per annum,

and where Plaintiff, if in agreement with the terms, would be paying so called monthly "mortgage payments" to Defendant in the amount of $1400.00 to Defendant Joseph, acting in concert and conspiracy with Defendant Friedman.

55.     During about June through October 2004, Plaintiff was made to believe from the misrepresentations of Defendant Joseph, acting in concert and conspiracy with Defendant Friedman, that he would be receiving a written deed for his  purchase of the subject premises, prior to Plaintiff moving in to the premises.

56.     The Defendants Joesph and Friedman knew that they were decieving Plaintiff with the aforesaid false representations, and knew that Plaintiff was trusting and relying upon those false representations made by Defendant Joseph acting in concert and conspiracy with Defendant Friedman.

57.     Defendants Joseph and Friedman, acting in concert and conspiracy, falsely represented the status of the premises to plaintiff as a legalized condominium knowing or believing that they would be defrauding plaintiff of tens of thousands of dollars or more, and believed they would continue to defraud the plaintiff for some continued time period into the future.

58.     In the summer of 2004, Plaintiff was additionally falsely advised by Defendant Joseph that Relief Defendant Srugo, a neighbor living upstairs from the subject premises in Unit 301 was likewise a condominium purchaser.

59.     It is noted here that within the orthodox hassidic community of which Plaintiff belongs, it is often the naïve practice as found commonly among diamond dealers, though not correct, to conduct business verbally with nothing more than a handshake without any written contracts, unless demanded.

60.     As part of the scam conducted in concert by Defendants Joseph and Friedman, Plaintiff never received any written deed or other official evidence from Defendant Joseph relating to the aforementioned purchase arrangements, despite having demanded of him that he provide Plaintiff with a deed reflecting the proof of his purchase.

61.     Plaintiff, in reliance upon the misrepresentations made from about June through August 2004 by Defendant Joseph, who was at all times acting in concert and conspiracy with Defendant Friedman, tendered to Defendant Joseph in about September 2004, the sum of $4,000.00.

62.     Plaintiff, in reliance upon the misrepresentations made during about June through October 2004, by Defendant Joseph, who was at all times acting in concert and conspiracy with Defendant Friedman, paid in addition to the aforesaid $4,000 down payment to Defendant Joseph, monies from out of his own pocket for the renovations and repairs to the subject premises, to make same habitable, in the sum amount of over $51,000.00, which included $41,000.00 to a contractor and $9,000.00 in related costs, in addition to the cost of approximately $1,500.00 for a refidgerator and a kitchen stove.

63.     Thereafter, Plaintiff, in reliance upon the continious misrepresentations made by Defendant Joseph post late-October 2004, spent during the period between November 1, 2004 and December 2009,  additional monies for emergency repairs totaling no less than $13,000.00.

64.     Beginning approximately October 2004, Plaintiff, in reliance upon the misrepresentations made by Defendant Joseph, tendered monthly "mortgage" payments in the amount of $1,400.00 to Defendant Joseph, who accepted same while acting in concert and conspiracy with Defendant Friedman.

65.     The aforesaid payment amount was at the demand of Defendant

Joseph, acting in concert and conspiracy with Defendant Friedman, increased by

Plaintiff to $1,475.00 per month beginning October 2006, to cover a purported

increase in the real estate taxes on the premises.


66.     In October 2004, just after Plaintiff completed and paid in full

for all the aforesaid renovations and had paid all the aforesaid related costs to bring

the premises to a habitable state, Plaintiff was advised by Defendant Joseph that

the subject premises was not a legally approved condeminium, and that no

condiminium conversion was even in the process.


67.     When Plaintiff confronted Defendant Joseph of his

misrepresentation, Defendant Joseph, while acting in concert and conspiracy with

Defendant Friedman, responded that it doesn't matter and nothing to be concerned

about, for the condominium conversion will very soon take place and Plaintiff will

receive title ownership to the subject premises in a very short time, conditioned on

Plaintiff continuing to timely make his monthly "mortgage payments".


68.     For the next approximate four years, beginning October 2004,

Plaintiff was continuously assured by Defendant Joseph that he was working with

lawyers to make a condominium conversion, and that as soon as there is a conversion Plaintiff will receive title to the subject premises.

69.     Plaintiff believes that between June 2004 and June 2009 Defendants Joseph and Friedman never sought or seriously sought, by means of retaining legal counsel, the conversion of the premises to a legal condominium. Instead, as shown next, the said defendants' initial plan was for the first three to four years after the premises was repaired and renovated by Plaintiff, to collect the fraudulent mortgage payments from Plaintiff, and to ignore Plaintiff's demands for a written contract, and thereafter to initiate their very own styled "ten plagues of Egyptian" directed against Plaintiff and his family in the hope to intimidate, harrass and extort Plaintiff to the point where Plaintiff would voluntarily pack up and forever leave the premises and abandon his rights to Unit 201, so as to permit Defendants Joseph and Friedman to be unjustly enriched from the increased value of the premises as a direct result from the repairs and renovations made by Plaintiff.

70.     Jumping ahead in time for a moment, during about May 2008, in furtherance of the scam to defraud Plaintiff, and in the hope to cause Plaintiff to abandon the premises, the Defendants Joseph and Friedman, acting jointly and

severally, permited the son-in-law of Defendant Friedman, a man named Abraham Samet, to renovate the floor below the three residential units in the subject address (an area that is above ground on one side that is referrred to herein as "sub-basemet"), in order to illegally operate a pizza shop and restaurant temporarily from that location, while knowing that Plaintiff and his family would be made extremely uncomfortable and not be able to tolerate the continious smell and heat rising from the store, as well as the pedestrian traffic that automatically will be present around the perimeter of the premises with the operation of such a business.

71.    Jumping further ahead in time, during about June 2009, Defendants Joseph and Friedman thereafter, acting jointly and severally, upon seeing that Plaintiff refused to move out in accordance with the plan, arranged for a garlic processing business that used the psudonym "Mr. Garlic" to occupy and use the apartment immediately below the premises, known as Unit 101. Mr. Garlic installed in Unit 101 large vats where garlic was boiled and where garlic was permitted to ferment causing a most obnoxious odor that felt like more than ten thousand times worse than the smell of the pizza store, making the lives of Plaintiff and his family simply unbearable. During about June of 2014, Mr. Garlic moved out of Unit 201.

72. At no time did Plaintiff ever give his permission or consent to anyone to open a pizza shop and/or restaraunt or any business at the premises.

73. On instructions from Defendant Friedman, the son-in-law of Defendant Friedman did give up the pizza shop during about 2011.

74. Thereafter, Defendants Joseph and Friedman, acting jointly and severally, fraudulently rented the so called sub-basement to a third party, namely, Relief Defendant Yossi's as a pizza store, upon information and belief, for the sum of $3,000.00 per month, with the rent revenue going to Defendants Friedman and Joseph.

75. Currently, the pizza store continues to function from the so called sub-basement at the subject address.

76. As part of the initial fraud scam conducted by Defendants Joseph and Friedman, acting jointly and severally, Plaintiff was falsely advised by Defendant Friedman during about June 2008 that he had purchased from Defendant Joseph all the rights, title and interest to the subject premises, and that in order for Plaintiff to continue residing in the subject premises he will be

required to pay an additional $225.00 per month as rent, for a total of $1700.00 per month, or otherwise face eviction from the premises.

77.     As a result of Defendant Friedman's purported claim to have purchased the subject premises a dispute ensued between Plaintiff and Defendant Friedman, and where Defendant Friedman, acting in concert and conspiracy with Defendant Joseph, subsequently presented the matter before a rabbinical court arbitration.

78.     Thereafter, an arbitration proceeding between Defendant Friedman and Plaintiff was held during the summer of 2008.

79.     At the arbitration proceeding Defendant Friedman, acting in concert and conspiracy with Defendant Joseph, made himself falsely appear as a recent arms length purchaser of the subject premises with no knowledge whatsoever of the arrangment that had existed prior thereto between his partner, Defendant Joseph, and Plaintiff.

80.     Defendant Friedman calculatedly concealed from the arbitrtors that he was currently a partner with Defendant Joseph dating back from before

2004, and that he was fully privy to all the terms, arrangments, and payments that were made between Defendant Joseph and Plaintiff in the 2004 agreement to sell the subject premises to Plaintiff.

81.     Plaintiff insisted that as evidence of his being a purchaser that he repaired and renovated the subject premises by that time in an amount that was already in excess of sixty-five thousand dollars.

82.     At the arbitration proceeding Defendant Friedman falsely insisted *inter alia* that he had no knowledge of the exorbatent monies Plaintiff spent in renovating the subject premises to transform same from an uninhabitable unit to a habitable apartment.

83.     At the said arbitration, Plaintiff demanded that Defendant Joseph was a necessary party and that he must also be made to participate at the arbitration as a party.

84.     The arbitrators on the false representations of Defendant Friedman alleging that he was a new purchaser, refused to adhere to Plaintiff, and

did not mandate that Defendant Joseph appear as a party, or even as a witness, to that arbitration proceeding.

85.     In September 2008, the arbitrators ruled that there was no evidence of any purchase of the premises on the part of Plaintiff and therefore Friedman was found to be the landlord, and accordingly they found there exists a landlord-tenant relationship between Defendant Friedman and Plaintiff.

86.     Clearly, the Defendant Friedman, a fee owner and partner with Defendant Joseph in the premises from pre-2004 through and including that time period in 2008, believed that he had well duped the arbitrators by purporting to be the new purchaser of the premises.

87.     During the entire year of 2008 and prior, continuing through about April 2020, Defendant Joseph while together in partnership with Defendant Friedman remained the title fee owners of the subject premises as well as the entire subject address.

88.     In essence, Defendants Joseph and Friedman, in their endeavoring to defraud Plaintiff via the aforesaid arbitration proceeding, rewrote

their deal with Plaintiff, and changed the staus of the herein Plaintiff retroactively to 2004 from that of oral-contract vendee in possession to that of tenant in possession.

89.    Moreover, Defendants Joseph and Friedman, in their endeavoring to defraud Plaintiff via the aforesaid arbitration proceeding that took place in the summer of 2008, rewrote their deal with Plaintiff, and changed their own status from that of Seller in oral contract to that of Landlord with legal responsibilities toward the rights of Plaintiff-tenant retroactively to 2004.

90.    In accordance with the arbitration ruling of September 2008, which found there to exist between Defendant Friedman and Plaintiff in the premises a landlord-tenant relationship, both the Defendants Joeph and Friedman were liable to Plaintiff for the costs of all the repairs and renovations made by Plaintiff to the subject premises from the summer of 2004 until at least September 2008, under the Doctine of Implied Warranty of Habitability.

91.    Even in the absence of the aforesaid doctrine, or even if hypothetically the said doctrine was not be applicable, Defendants Joseph and Friedman still remain liable to Plaintiff, both jointly and severally, for Plaintiff's

full renovation to the subject premises, as Plaintiff acted regarding the repairs and renovations on their directive.

**IN FURTHERANCE OF THE FRAUD SCAM**

92.    On or about December 29, 2008, in furtherance of their scheme to defraud Plaintiff, the Defendant FRIEDMAN, acting in concert and conspiracy together with Defendants JOSEPH, SIMAN LLC, SIMAN TOV, KJ ACRES, KYM LAD, KY MOTEL, KUNSTLINGER, and KUNSTLINGER P.C., (collectively "FIRST GROUP OF RICO Defendants"), appeared at the subject premises on or about late December 2008 without an appointment and without any lawyer. Friedman stood in Plaintiff's dining room and presented Plaintiff with a written contract dated December 29, 2008 requesting him to sign, for the sale of the subject premises.

93.    The Sellers listed on the aforesaid contract was the Defendants Friedman and Siman Tov, with Defendant Joseph acting on behalf of Defendant Siman Tov.

94.    The Purchaser listed on the aforesaid contract was Plaintiff.

95. Upon information and belief, Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C. while acting in concert and conspiracy with Defendants JOSEPH, FRIEDMAN, SIMAN LLC, SIMAN TOV, KJ ACRES, KYM LAD, KY MOTEL, drafted and prepared the contract for the purchase of the subject premises on behalf of the sellers to said contract.

96. The said contract when presented to Plaintiff for signature had already been signed by Defendant Joseph on behalf of his company Defendant Siman Tov.

97. As part of the scam, Plaintiff was never provided an opportunity to be represented by an attorney at the signing of the contract.

98. Defendant Friedman assured Plaintiff that by signing the written contract of December 29, 2008, it would lead to him obtaining title to the subject premises as a legal condominium in the very near future.

99. On or about December 29, 2008, while in Plaintiff's dining room, Defendant Friedman agreed to close down the pizza store by no later than

the end of the summer of 2009, and not to further allow any commercial establishments to operate at the subject address. Defendant Friedman added this term by hand with pen ink as a clause to the body of his prepared contract dated December 29, 2008 and same was immediately thereafter initialed by both Defendant Friedman and Plaintiff.

100. In accordance with the aforementioned fraud scam, immediately after Plaintiff and Defendant Friedman initialed and signed the said contract, and despite Plaintiff's objections, Defendant Friedman confiscated the said contract from out of Plaintiff's hands while promising in a most assuring manner he was going to return it to Plaintiff after he makes for himself a copy.

101. Defendant Friedman never returned Plaintiff the original or any copy of that contract despite Plaintiff continuously demanding that he do so. During the first three or four months in 2009 Defendant Friedman continuously promised and assured Plaintiff that he would be returning back to him his original contract.

102. In accordance with the terms of the aforesaid contract, upon issuance of a non-contest letter Plaintiff is obligated to make a down payment of $17,000.00 to sellers.

103. Plaintiff, while naively trusting that the premises would be conveyed by the sellers in the near future, and while also trusting what was believed to be practical advice of Defendant Friedman, Plaintiff began on January 2009 to pay in advance and on account toward the down payment, an amount equal to ten percent of the required seventeen thousand dollars down payment, which is equivalent to $1,700.00 each month.

104. To date, and before taking any other entitled reductions and credits off the purchase price, Plaintiff has to date made at least 36 such installments of $1,700.00 each to be applied on account toward the purchase price, which totals $61,200.00 already paid toward the purchase price.

105. Upon information and belief, Defendants Friedman and Joseph had employed Defendant Kunstlinger, an attorney with Defendant Kunstlinger P.C., to draft, modify, and submit the contract to the office of the

Attorney General in a manner that would conceal his activities, in order to defraud Plaintiff and deprive him of his property rights to the subject premises.

106. At some point in time between the time period subsequent to Defendant Friedman having confiscated the aforesaid written contract and about March 2009, Defendant Friedman and/or Defendant Joseph and/or Defendant Kunstlinger and/or their agents, acting without the knowledge and/or consent of Plaintiff did fraudulently modify the aforesaid written contract dated December 29, 2008 to the predjudice of Plaintiff, by removing the page containing the aforementioned added clause relating to Defendant Friedman agreeing to close down the pizza store by end of the summer of 2009 and agreeing not to permit any other commercial business to operate from out of the subject address, which clause was written by Defendant Friedman's own hand in pen and initaled by both Defendant Friedman and Plaintiff, and exchanged it with a page that had no such handwritten clause.

107. For the reasons set forth below, and entirely independent of the aforementioned fraudulent modification, the execution of the contract for all purposes changed the status of Plaintiff going forward in time from that of "Tenant" to that of "Contract vendee in Posession".

108. Besides for being public knowledge that Plaintiff resides at the subject premises, the said contract too explicitly acknowledges the Plaintiff as being in possession of the subject premises, by its noting on the first page the address of Plaintiff as being the subject premises. Accordingly, Respondent is a contract vendee in possession of the subject premises.

109. Moreover, ¶ 22 of the aforesaid contract states in pertinent part:

> **"all prior understandings and agreements between seller and purchaser are merged in this contract. It completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract."**

110. In accordance with the abovementioned ¶22, all Plaintiff's obligations as contract vendee in possession are set forth in the contract. Clearly, the contract does <u>not</u> obligate Plaintiff to pay any amount of rent whatsoever to Defendants Friedman and Defendant Joseph.

111. Moreover, the aforesaid contract is entirely silent as to the arbitration ruling of September 2008. The contract does not define the status of

Plaintiff from the date of contract until the closing date as being that of a tenant with obligations as such, nor does it define Plaintiff's status as continuing in the same manner previously determined by the September 2008 arbitration ruling.

112. Pursuant to ¶22 quoted above, in the absence of any mention within the aforesaid contract as to the arbitration ruling of September 2008, the said contract thoroughly causes Plaintiff's tenant status, held since 2004 pursuant to that arbitration ruling, to cease for all purposes beginning from its execution date on December 29, 2008 and moving forward.

113. As part of the scam to defraud Plaintiff of his rights to the subject premises, Defendant Friedman gave the original signed contract of sale for the subject premises, dated December 29, 2008 to Defendant Kunstlinger and/or Defendant Kunstlinger P.C.

114. Accordingly, Defendant Kunstlinger in his own capacity and in his capacity as Defendant Kunstlinger P.C., knew of the existence of the contract dated December 29, 2008 relating to the subject premises, between Defendants Friedman, Siman Tov, and Plaintiff.

115.    Defendant Kunstlinger acting jointly and severally, and in concert and conspiracy together with Defendant Kunstlinger P.C. and all of the other remaining First Group of RICO Defendants, did take steps to directly defraud plaintiff of his contractual rights to purchase the subject premises.

116.    Defendant Kunstlinger in his own capacity and in his capacity as Defendant Kunstlinger P.C., knew that neither he nor any other attorney had participated on behalf of the Sellers, namely Defendants Friedman, and Siman Tov, at the execution of the aforementioned contract dated December 29, 2008.

117.    Defendant Kunstlinger in his own capacity and in his capacity as Defendant Kunstlinger P.C., knew that Plaintiff had not been represented by any legal counsel at the execution of the contract dated December 29, 2008 relating to the subject premises.

118.    Defendant Kunstlinger in his own capacity and in his capacity as Defendant Kunstlinger P.C., despite knowing that Plaintiff was the purchaser on said contract dated December 29, 2008, for the subject premises, and despite knowing that Plaintiff was not represented by counsel relating to the execution of the contract dated December 29, 2008, never endeavored to communicate or

contact Plaintiff by phone, mail or any other manner whatsoever, regarding any matters relating to said contract.

119.  Upon information and belief, during about early January 2009 through on or about March 2009, Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C. acting in concert and conspiracy with the other remaining First Group of RICO Defendants, in seeking to defraud Plaintiff, did take careful steps to deliberately prevent plaintiff from (i) being aware that the said contract was at his office and (ii) to prevent Plaintiff from becoming aware that he intended to submit the said contract to the Office of the Attorney General of the State of New York for purposes relating to the converting the subject premises to a condominium, also known as an application for a "no action letter".

120.  At no time subsequent to March 5, 2009, that being the date of the "no action letter" from the New York State Attorney General, did the Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C. ever notify the herein Plaintiff that a "no action letter" had been issued.

121.    Upon information and belief, beginning about early March 2009 and time thereafter, the Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C. acting in concert and conspiracy with the other remaining First Group of RICO Defendants, in order to defraud Plaintiff, did take steps to deliberately prevent plaintiff from becoming aware that the Office of the Attorney General had issued a "no action letter" relating to the contract of sale dated December 29, 2009, in the hope and with the intent to cheat and rob plaintiff of his property rights to the subject premises.

122.    Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C., as attorney for the sellers on the aforesaid contract, having known that Plaintiff as purchaser was not represented by legal counsel, is believed to have had additional legal responsibilities, including but not limited to his own fiduciary responsibilities as an attorney, to make certain that all required acts, state rules, and statutes related to condominium conversions are fully complied with.

123.    Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C. as attorney for the sellers on the aforesaid

contract, and while acting in concert and conspiracy with the other remaining First Group of RICO Defendants, overtly violated his basic fiduciary responsibilities.

124. Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C., while acting in concert and conspiracy with the other remaining First Group of RICO Defendants, submitted falsified documentation with intent to defraud Plaintiff, the public and the AG, relating to an illegal condominium plan.

125. Defendant Kunstlinger in his own capacity and/or in his capacity as Defendant Kunstlinger P.C., as attorney for the sellers on the aforesaid contract, by his overt intentional violations of his fiduciary responsibilities and intentional overt disregard of certain laws, state rules, and statutes related to condominium conversions, directly caused Plaintiff to be damaged and defrauded.

126. As part of the Defendants Friedman and Joseph's fraud scam, and while exploiting Plaintiff's ignorance of the condominium conversion process, Plaintiff was made to believe by Defendant Friedman at the time of Plaintiff's signing the contract in December 2008 that Plaintiff's apartment was going to be converted to a

condominium through a mutually hired lawyer, and <u>not</u> through the office of the New York State Attorney General.

127. Thereafter, at some time during about May or June 2009, in furtherance of Defendant Friedman's intent to mislead Plaintiff and defraud same of his property rights, the Defendant Friedman falsely advised Plaintiff that he had given the aforesaid written contract to an attorney to review and was advised that he cannot legally convert to condominiums at this time, but that he (Defendant Friedman) will endeavor to find another attorney with more experience about condominiums and he and Plaintiff herein will together make a new contract and go together to such lawyer.

128. As part of the scam, Plaintiff was made to believe by about mid-2009 by Defendant Friedman that he had physically destroyed the original contract, but that the same seller-buyer relationship still existed and that he and Plaintiff would be drafting another contract in the very near future for presentation to an experienced lawyer, with the same terms included therein less any installments already paid by Plaintiff on account.

## THE FRAUDULENT CONVEYANCE OF THE PREMISES

129.  By or about November 2011, Plaintiff became aware that Defendant Friedman had conned him and immediately ceased making further down payments on account of his purported purchase.

130.  Moreover, on or about November 2011, Plaintiff was advised that the premises had been converted to a condominium and had been fraudulently conveyed to Defendant KJ Acres.

131.  The aforesaid fraudulent conveyance occurred during about September 2010, by deed filed with the County of Orange, dated September 16, 2010, between Defendants Friedman and Siman Tov, as sellers and Defendant KJ Acres as purchaser.  As previously stated herein, during the past four years Defendant Friedman owned Defendant KJ Acres and is/was its sole member and controlling party.

132.  The aforementioned fraudulent conveyance from Defendants Friedman and Siman Tov to Defendant KJ Acres was not an arms length deal.

133. The aforementioned fraudulent conveyance from Defendants Friedman and Siman Tov to Defendant KJ Acres was a violation of the aforementioned contract of sale dated December 29, 2008, and was deliberately made by the said parties while acting in concert and conspiracy with the other remaining First Group of RICO Defendants, with the hope and intent to defraud Plaintiff of his property rights to the subject premises

134. Upon information and belief the aforementioned deed transfer was made without consideration of value.

135. On or about March 2013, after more than fifteen months of arguing between Defendant Friedman and Plaintiff, and after which time Defendant Friedman felt fully certain and assured that Plaintiff is entirely ignorant as to the existence of the contract dated December 29, 2008, Friedman acting through Defendant KJ Acres as the Petitioner, and while acting in concert and conspiracy with Defendants JOSEPH, FRIEDMAN, SIMAN LLC, SIMAN TOV, KYM LAD, KY MOTEL, COHEN GROUP , COHEN, LABARBERA, LANDRIGAN, THALBLUM, MILLIGRAM, KUNSTLINGER, and KUNSTLINGER P.C., commenced an eviction proceeding at the Justice Court, Town of Monroe, before Judge Steven Milligram.

136.   At about the same time aforementioned, Defendant Friedman again took Plaintiff herein to arbitration.   Defendant Friedman, with intent to further defraud Plaintiff, boldly denied to the arbitrators having ever entered into any contract of sale relating to the subject premises.   Plaintiff had no proof to support his position because Defendant Friedman had fraudulently confiscated his contract at the end of 2008 and refused to return it.

137.   Plaintiff once again insisted that he wanted to bring Defendant Joseph as a witness, but the arbitrators denied Plaintiff that right.

138.   The arbitrators during about March 2013 issued a ruling limited specifically and solely to reconfirming the previous arbitration ruling of September 2008 and nothing more, which first ruling explicitly set forth the reason for the ruling being that Plaintiff was not a purchaser of the subject premises.

139.   The arbitrators issued a decision that never addressed or made any final decision to resolve the controversy originally presented thereto.

140. The second arbitration, which took place in 2013, despite being invalid on its face, did not touch or affect the validity of the December 29, 2008 contract of sale in any fashion, or Plaintiff's current status as a contract vendee in possession.

141. Defendant Friedman, acting on behalf of Defendant KJ Acres at the Justice Court, continued to confidently believe that Plaintiff would never discover the contract of December 29, 2008.

142. Accordingly, Defendant FRIEDMAN, acting in concert and conspiracy with Defendants JOSEPH, SIMAN LLC, SIMAN TOV, KJ ACRES, KYM LAD, KY MOTEL, COHEN GROUP, COHEN, LABARBERA, LANDRIGAN, THALBLUM, MILLIGRAM, KUNSTLINGER, and KUNSTLINGER P.C., repeatedly affirmed falsely before the Justice Court, with the intent to pull a fraud on that Court and to defraud Plaintiff, that Plaintiff was residing in the subject premises as a month to month tenant and that Plaintiff was obligated under a landlord-tenant relationship to pay rent at the rate of $1,700.00 per month, and that Plaintiff was in default of those monthly rent payments.

143. Defendant Friedman, acting on behalf of Defendant KJ Acres, and with intent to defraud Plaintiff, did falsely and perjuriously deny to the Justice Court throughout the instant case the existence of, or knowledge of, any written contract-agreement whatsoever with the therein Respondent; now the herein Plaintiff.

144. In furtherance of the fraud scam, the Petitioner therein (Defendant KJ Acres) sought to commit further grand larceny by demanding that the Justice Court issue a money judgment against Plaintiff herein in excess of $50,000.00.

145. Moreover, a perjurious Affirmation submitted on behalf of Petitioner therein (Defendant KJ Acres), and titled "In Opposition To Respondent's Motion To Dismiss Proceeding", dated December 4, 2013, contained a barrage of deliberately false representations of material facts thoroughly denying the existence of any contract, both written or oral, with Plaintiff herein and which was presented to the Justice Court in support of the fraud scam by Defendant Thalblum acting in concert and conspiracy with the Rico Defendants

146. In common resemblance with the aforesaid perjurious Affirmation, the Justice Court record, dated December 4, 2014, as well as the

initial Petition, all reflects similar false representations by Defendant Thalblum on behalf of Defendant KJ Acres, while acting in concert and conspiracy with the RICO Defendants.

147.   Moreover, the Justice Court file is filled with numerous falsified monetary statements forged by Defendant Friedman as agent for Defendant KJ Acres and the Defendant KYM LAD, while acting in concert and conspiracy with the RICO Defendants.

148.   Defendant Judge Milligram was repeatedly informed between May 2014, through December 4, 2013 that he had no subject matter jurisdiction, for respondent (Plaintiff herein) is a contract vendee in possession and not a tenant.

149.   Plaintiff's counsel moved at the Justice Court, before Judge Milligram for dismissal of the action on the grounds *inter alia* that the Justice Court lacked subject matter jurisdiction.

150.   On December 4, 2013, at the Justice Court, Defendant Milligram presiding, the Plaintiff insisted truthfully that he was not a tenant but a contract vendee in possession.  However, because Defendant Friedman had

fraudulently confiscated the written contract dated December 29, 2008 and never returned it, Plaintiff had no sufficient documentary evidence to prove his position.

151. Upon information and belief Defendant Friedman was the executive director of Ezras Choilim Medical center until about Summer of 2009.

152. Upon information and belief Defendant Cohen is on the board of Ezras Choilim Medical Center in Monroe NY, he has been for at least the last 6 years.

153. Upon information and belief Ezras Choilim has or had a business relationship with defendant Milligram including but not limited to during the Summer of 2009.

154. Upon information and belief Defendants Cohen Group and/or Cohen has or has a business relationship with Defendant Milligram.

155. Going back some months previous in 2013; on or about August 14 2013, Defendant Milligram issued a default judgment and eviction against the Plaintiff.

156. Said default was issued after there was already joinder of issue, after plaintiff had already appeared at least twice in that action, and after about only half an hour that Plaintiff did not show up for a scheduled hearing.

157. Upon information and belief, defendant Milligram acted intentionally and vigorously against the Plaintiff to hit him with a default in concert and conspiracy with defendants FRIEDMAN, KYM LAD, KJ Acres, 131 CONDO, THALBLUM, COHEN, LABARBERA, LANDRIGAN, Cohen Group, not granting him the minimum chance, as evident from the record of that day.

158. During late November 2013, defendant KJ Acres filed a petition in Justice Court Town of Monroe before Defendant Milligram.

159. Said petition was filed with a fraudulent intent to in concert with defendant Joseph, Friedman, Kym LAD, Simon Tov, and the other RICO Defendants.

160. Said petition contained financial statements filed by defendant Friedman in concert with defendant Thalblum relating to the billings and payments of plaintiff.

161. Said statements were fraudulently altered.

162. On or about late December 4 2013 defendant Milligram acted absent jurisdiction after Plaintiff presented that he was a contract vendee in possession; that the Bais Din award had no collateral estoppel; and that the petitioner in that action had no claim of being a landlord.

163. At a hearing on December 4 2014 defendant Milligram denied Plaintiff the right to a fair hearing by not giving him time to read the opposition to plaintiffs motion which was served on Plaintiff right before the proceeding began.

164. Defendant Milligram did not afford Plaintiff an opportunity to file a reply to said opposition.

165. Defendant Milligram did not afford Plaintiff an opportunity to prepare for said hearing after the opposition was submitted.

166. Defendant Milligram stated at the hearing that had a already decided his ruling on the motion against plaintiff before plaintiff was even heard, not affording Plaintiff a fair opportunity to be heard.

167. Defendant Milligram violated Plaintiff's due process rights, when he stated that he will proceed that night of the hearing to a trial on the merits, without joinder of issue and in direct violation of RPA. LAW § 732(2), not affording plaintiff a right to answer and be heard.

168. Defendant Miligram further stated that he would rule against plaintiff at trial, while Plaintiff's right to file an answer was violated.

169. Defendant Milligram then further informed plaintiff that unless Plaintiff herein is to enter into his proposed stipulation on the record then Defendant Milligram will immediately issue judgment and eviction that same evening.

170. Defendant Milligram refused to consider that plaintiff had a claim and a defense of Habitability amounting to more than the claim for judgment and eviction.

171. Defendant Thalblum and Friedman in concert and conspiracy with the other remaining RICO Defendants, went along with plaintiffs violation of due process.

172. During the entire hearing plaintiff was severely traumatized and in total shock and distress.

173. Under the conditions presented by Judge Milligram on his court record of December 4, 2013, if Plaintiff were to refuse he and his family of nine children, and pregnant wife would be ordered evicted from the premises forthwith.

174. Since that evening plaintiff remained in trauma and in emotional distress.

175. Defendant Milligram did not inform plaintiff during the hearing that said stipulation if entred into by plaintiff would not be appealable.

176. Defendant Milligram gave plaintiff less than 2 days to escrow an humongous sum of money.

177. Upon information and belief defendant Milligram in concert with defendant Friedman, Thalblum and the other remaining RICO Defendants, acted against plaintiff in this manner believing that plaintiff would be unable to escrow a large amount in less than 2 days, and would enable them to falsely evict plaintiff without due process.

178. On the afternoon of December 6, 2013, Plaintiff filed for bankruptcy protection.

179. Thereafter, a certain community activist named Menachem Blum, contacted the office of the New York State Attorney General hoping to find some fraudulent representations made by Defendants Joseph and Friedman. Surprisingly, the Attorney General's office sent back a letter with the contract dated December 29, 2008.

180.   Between January and May 2014, the RICO Defendants acting in concert and conspiracy, with intent to defraud, damage and injure Plaintiff herein, did repeatedly file at the United States Bankruptcy Court falsified documents constituing a violation under 18 USC §1952.

181.   During about May 2014 the RICO Defendants acting in concert and conspiracy, with intent to defraud, damage and injure Plaintiff herein, did violate the automatic stay.

182.   During late May of 2014, plaintiff for a second time presented to defendant Milligram with an order to show cause to be signed containing the recently discovered information and documents of the fraud perpetrated by the petitioner in the aforementioned action.

183.   During late May of 2014, plaintiff for a second time presented to defendant Milligram with an order to show cause pursuant to CPLR §5015(a)(2)(3) for signing, seeking vacatur of the December 4, 2013 stipulation based on newly discovered evidence, to wit, the existence of the contract dated December 29, 2013, and which shows beyond the shadow of a doubt that Defendants Friedman and KJ Acres had committed a fraud of the court and on

Plaintiff herein. Plaintiff sought a stay of enforcement of the aforementioned stipulation and a stay of the eviction.

184. Plaintiff gave sufficient notice in advance to counsel for Defendant KJ Acres of his intent to seek a stay at the Justice Court.

185. The parties represented by counsel both appeared at the Justice Court before Judge Milligram on Wednesday, May 28, 2014.

186. Judge Milligram was upset that Plaintiff had truthfully referred to Defendant Friedman and his attorney as being a con artist. Judge Milligram showed no problem with the acts of fraud perpetrated on his court or against the Plaintiff; only he found it disgraceful to refer to the perpetrators by the term that describes them truthfully for what they are and deserve to be called.

187. Judge Milligram denied the show cause on the record, but refused to sign any paper reflecting his denial.

188. Defendant Milligram refused to sign the aforesaid show cause without proper reason, blaming plaintiff for writing the words fraud and con.

189. Defendant Milligram refused to sign the aforesaid show cause while knowing that by doing so he was denying Plaintiff herein his constitutional right to file an appeal.

190. Defendant Milligram refused to sign the aforesaid show cause while knowing that by doing so he was denying Plaintiff herein his constitutional right move at the Appellate Term to compel the said show cause to be placed on the court calendar.

191. Judge Milligram deprived Plaintiff of the basic civil rights provided him as a citizen of the United States.

192. Judge Milligram subsequently signed his denial of the show cause after plaintiff complained to the Administrative Judge.

193. Judge Milligram, knew that in view of the contract dated December 29, 2008, the Justice Court had no subject matter jurisdiction.

194. Judge Milligram acted outside his jurisdiction.

195. Judge Milligram additionally violated a 14-day Bankruptcy Court stay that was still in place when he signed an order of eviction against Plaintiff a week prior to the May 28, 2014 appearance.

196. As a result of Judge Milligram refusing to issue his denial in writing Plaintiff and his family were caused undue stress and aggravation.

197. During about early March of 2013, defendant FRIEDMAN acting in concert with defendants JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, made fraudulent statements in the Justice court in the TOwn of Monroe that the petitioner KJ Acres is a landlord and that plaintiff is a tenant.

198. On December 4 2013, defendant FRIEDMAN acting in concert with defendants JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, again falsely and fraudulently misrepresented to the Justice Court in Town of Monroe and to the plaintiff in writing and also verbally on the record that there never was a contract between plaintiff and said defendants on the subject premises.

199. During about early April of 2014 defendant THALBLUM acting in concert with defendant FRIEDMAN, JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, 131 CONDO, COHEN, LABARBERA, LANDRIGAN, Cohen Group, ASHEL BEAR knowingly and intentionally denied in Bankruptcy Court SDNY again that there was a an existing contract.

200. During about early April of 2014 defendant THALBLUM acting in concert with defendant FRIEDMAN, JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, falsely knowingly and intentionally stated in Bankruptcy Court SDNY that plaintiff had breached the contract.

201. Between late April of 2014 until sometime in May defendant THALBLUM acting in concert with defendant FRIEDMAN, JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, 131 CONDO, COHEN, LABARBERA, LANDRIGAN, Cohen Group, ASHEL BEAR repeatedly, falsely, and intentionally stated in Bankruptcy Court SDNY that plaintiff had breached the contract.

202. From about May 21 until early May of 2014 defendant THALBLUM acting in concert with defendant MILLIGRAM, JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, 131 CONDO, COHEN, LABARBERA, LANDRIGAN, Cohen Group, ASHEL BEAR falsely knowingly and intentionally stated in Justice Court Town of Monroe that plaintiff had breached the contract.

203. From about May 21 until early May of 2014 defendant THALBLUM acting in concert with defendant MILLIGRAM, JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, 131 CONDO, COHEN, LABARBERA, LANDRIGAN, Cohen Group, ASHEL BEAR knowingly and intentionally violated the Bankruptcy automatic stay of plaintiff.

204. From about May 21 until early May of 2014 defendant THALBLUM acting in concert with defendant MILLIGRAM, JOSEPH, SIMON TOV, SIMON LLC, KY MOTEL, KYM LAD, KJ Acres, 131 CONDO, COHEN, LABARBERA, LANDRIGAN, Cohen Group, ASHEL BEAR knowingly and intentionally as a result of said violation caused plaintiff injuries and damages, from being unable to pursue his legal remedies during the period the stay was violated.

205. On May 28 2014 defendant Thalblum made believe that there was no Bankruptcy stay in place, despite being warned that there was still a stay in effect.

206. Defendant MILLIGRAM, acting in concert with defendant THALBLUM, COHEN, LABARBERA, LANDRIGAN, Cohen Group, after being presented with the contract of sale and proof of the fraud, allowed and supported the fraud to continue unabated.

## RICO ENTERPRISE

207. The enterprise comprised of the following RICO Defendants, to wit, Defendants JOSEPH, FRIEDMAN, SIMAN LLC, SIMAN TOV, KJ ACRES, KYM LAD, KY MOTEL, COHEN GROUP , COHEN, LABARBERA, LANDRIGAN, THALBLUM, MILLIGRAM, KUNSTLINGER, and KUNSTLINGER P.C., all whom collectively constitute a RICO enterprise under 18 U.S.C. §§ 1962 (c) and (d) ("Enterprise").

208. The composition, scope, and membership in the Enterprise was maintained as an ongoing organized association functioning as a continuing unit associated for the common purpose of engaging in illegitimate purposes, including defrauding the Plaintiff herein via activities that constitute extortion, and mail fraud, and/or by means of aiding and abetting others to defraud Plaintiff via activities that constitute extortion and mail fraud.

209. The Enterprise was structured to function under the primary direction of Defendants JOSEPH, FRIEDMAN, COHEN GROUP, LANDRIGAN, THALBLUM, MILLIGRAM, and KUNSTLINGER all of whom regularly and routinely controlled and conducted the business of the Enterprise and its other constituent members, in an effort to perpetrate wrongful and unlawful acts against Plaintiff, including but not limited to aiding and abetting other members.

210. Each of the individual members of the Enterprise answered to Defendants JOSEPH, FRIEDMAN, COHEN GROUP, LANDRIGAN, THALBLUM, MILLIGRAM, and KUNSTLINGER. Each member of the Enterprise performed unlawful acts for and on behalf of the Enterprise.

211.    Upon information and belief, the Enterprise has existed since about December of 2008 and continues to exist to this date.  From about December of 2008 to and including about September 16, 2010, Defendants KUNSTLINGER, JOSEPH and FRIEDMAN are believed to have  directed and controlled the Enterprise and each of its component parts.

212.    Upon information and belief, between about December of 2008 and including about September 16, 2010, the Defendants, FRIEDMAN, SIMAN LLC, SIMAN TOV, KJ ACRES, KYM LAD, KY MOTEL, KUNSTLINGER, and KUNSTLINGER P.C., were knowing participants and co-conspirators in the unlawful activity undertaken by themselves and the Enterprise.

213.    Upon information and belief, at times between about December of 2008 and including the current date, the Defendants JOSEPH, FRIEDMAN, SIMAN LLC, SIMAN TOV, KJ ACRES, KYM LAD, KY MOTEL, COHEN GROUP , COHEN, LABARBERA, LANDRIGAN, THALBLUM, MILLIGRAM, KUNSTLINGER, and KUNSTLINGER P.C were knowing participants and co-conspirators in the unlawful activity undertaken by themselves and the Enterprise.

214. The RICO Defendants are separate and distinct from the RICO enterprise alleged herein and were each individually involved in the wrongdoing.

**Predicate Acts**

215. The predicate acts forming the pattern of racketeering, and the specific United States statutes violated thereby, include:

(a) mail fraud

(b) wire fraud  foreseeable  future

(c) extortion

(d) Bankruptcy fraud

216. In furtherance of the goals and purposes of the Enterprise, the RICO Defendants acting in concert and conspiracy, committed on multiple occasions in violation of 18 U.S.C. §1962, mail fraud §1341.

217. In furtherance of the goals and purposes of the Enterprise, the RICO Defendants acting in concert and conspiracy, committed on multiple occasions in violation of 18 U.S.C. §1962, wire fraud §1343.

218. In furtherance of the goals and purposes of the Enterprise, the RICO Defendants acting in concert and conspiracy, committed on multiple occasions in violation of 18 U.S.C. §1962, extortion.

219. In furtherance of the goals and purposes of the Enterprise, the RICO Defendants acting in concert and conspiracy, committed on multiple occasions in violation of 18 U.S.C. §1962, Bankruptcy fraud §1952.

220. In furtherance of the goals and purposes of the Enterprise, RICO Defendants sought to defraud Plaintiff of his property rights in the subject premises by means an artifice that inevitably required a violation of mail fraud; and RICO Defendants knew their use of the United States mail was expected and foreseeable.

221. In furtherance of the goals and purposes of the Enterprise, RICO Defendants sought to defraud Plaintiff of his property rights in the subject premises by means an artifice that inevitably required a violation of mail fraud; and RICO Defendants knew their use of the United States mail was expected and foreseeable.

222. In furtherance of the goals and purposes of the Enterprise, RICO Defendants sought to defraud Plaintiff of his property rights in the subject premises by means an artifice that inevitably required a violation of wire fraud; and RICO Defendants knew their use of wire fraud was expected and foreseeable.

223. Upon information and belief, RICO Defendants, acting in concert and conspiracy and as part of a scheme to defraud Plaintiff, knowingly acted and/or aided and abetted in extorting plaintiff under false and fraudulent pretenses to take acts against his will whereby he would unjustly relinquish his rights in real property or otherwise be forced to unjustly pay exorbitant sums.

224. During about 2011 Defendant Friedman repeatedly used Defendant KY Motel, an entity operating out of state for the purpose of fraudulently billing Plaintiff for his false rent demands.

225. Defendant Friedman and Joseph are liable for treble damages to Plaintiff for their violations of the civil RICO statute.

226. Defendant Friedman and Joseph are liable for causing Plaintiff emotional stress and suffering.

227. Defendant Friedman and Joseph are liable for punitive damages.

## PLAINTIFF'S DECLARATION

228. Plaintiff who is appearing herein pro se respectfully declares that he is currently a plaintiff in this United States District Court in a law suit that was previously removed from the New York State Supreme Court, County of Orange, which seeks specific performance relating to the contract of sale for the subject premises; and that no terminology whatsoever or legal demands stated herein or omitted herein are intended to imply or should be construed to imply that Plaintiff has abandoned that action for specific performance or no longer seeks title to the subject premises.

## AS AND FOR THE FIRST CAUSE OF ACTION

229. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

230. The Defendant, STEVEN MILLIGRAM, acting jointly and severally and in concert and conspiracy with the defendants ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM, COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C., in violation of 42 U.S.C. §1983, §1985, and §1986 did injure and damage Plaintiff, and Plaintiff is entitled to declaratory and injunctive relief to be determined by the Court.

## AS AND FOR THE SECOND CAUSE OF ACTION

231. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

232. The defendants, ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM, COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH

KUNSTLINGER, JOSEPH KUNSTLINGER P.C., acting jointly and severally, and in concert and conspiracy, with an intent to injure, by their having violated 42 U.S.C. §1983 caused Plaintiff injury and damages, in an amount to be determined at trial.

## AS AND FOR THE THIRD CAUSE OF ACTION

233. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

234. The defendants, ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM, COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C., acting jointly and severally, and in concert and conspiracy, with an intent to injure, by their having violated 42 U.S.C. §1985 caused Plaintiff injury and damages, in an amount to be determined at trial.

## AS AND FOR THE FOURTH CAUSE OF ACTION

235. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

236. The defendants, ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM, COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C., acting jointly and severally, and in concert and conspiracy, with an intent to injure, by their having violated 42 U.S.C. §1986 caused Plaintiff injury and damages, in an amount to be determined at trial.

## AS AND FOR THE FIFTH CAUSE OF ACTION

237. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

238. The defendants, ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM, COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P.

LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH

KUNSTLINGER, JOSEPH KUNSTLINGER P.C., acting jointly and severally,

and in concert and conspiracy, with an intent to injure, by their having violated 18

USC 1962 (c) have caused Plaintiff injury and damages, and Plaintiff is entitled to

treble damages of an amount to be determined at trial.


### AS AND FOR THE SIXTH CAUSE OF ACTION

239. Plaintiff repeats and realleges each and every allegation as set

forth above, as though same were fully stated hereinafter.


240. The defendants, ABRAHAM JOSEPH, NUCHEM

FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES,

LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM,

COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P.

LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH

KUNSTLINGER, JOSEPH KUNSTLINGER P.C., acting jointly and severally,

and in concert and conspiracy, with an intent to injure, by their having violated 18

USC 1962 (d) have caused Plaintiff injury and damages, and Plaintiff is entitled to treble damages of an amount to be determined at trial.

## AS AND FOR THE SEVENTH CAUSE OF ACTION

241. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

242. The defendants, ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM, COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C., acting jointly and severally, and in concert and conspiracy, with an intent to injure, by their having violated 11 U.S.C. §362(h) causing Plaintiff injury and damages, in an amount to be determined at trial.

## AS AND FOR THE EIGHT CAUSE OF ACTION

243. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

244. The defendants, ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, 131 ACRES RD CONDOMINIUM, COHEN LABARBERA LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C., acting jointly and severally, and in concert and conspiracy, with an intent to injure, by their deliberate and intentional tortious interference with the Plaintiffs rights to the contract while acting together in concert and conspiracy, and have injured Plaintiff in an amount to be determined at trial.

## AS AND FOR THE NINTH CAUSE OF ACTION

245. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

246. That Plaintiff has been injured and damaged in an amount to be determined by the Court after trial by defendants ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, COHEN, LABARBERA, LANDRIGAN, LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C. acting jointly and severally with intent to cause damage, as a result of the said defendants' committing the crime of extortion while acting together in concert.

## AS AND FOR THE TENTH CAUSE OF ACTION

247. Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

248. That Plaintiff has been injured and damaged in an amount to be determined by the Court after trial by defendants ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, ASHEL BEAR SHEVA LLC, COHEN, LABARBERA, LANDRIGAN, LLP, RONALD J. COHEN, STEPHEN

P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN,

JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C. acting jointly and

severally with intent to cause damage, as a result of the prima facia tort committed

by said defendants' while acting together in concert.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION

249.    Plaintiff repeats and realleges each and every allegation as set

forth above, as though same were fully stated hereinafter.

250.    That Plaintiff has been injured and damaged in an amount to be

determined by the Court after trial by defendants ABRAHAM JOSEPH,

NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ

ACRES, LLC, KYM LAD LLC, KY MOTEL, COHEN, LABARBERA,

LANDRIGAN, LLP, RONALD J. COHEN, STEPHEN P. LABARBERA,

STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER,

JOSEPH KUNSTLINGER P.C. acting jointly and severally with intent to cause

damage, as a result of the said defendants' violations pursuant to NY GBL Sec.

349  while acting together in concert and conspiracy.

## AS AND FOR THE TWELFTH CAUSE OF ACTION

251.    Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

252.    That Plaintiff has been injured and damaged in an amount to be determined by the Court after trial by defendants ABRAHAM JOSEPH, SIMAN TOV LLC, KJ ACRES LLC, KYM LAD LLC, KY MOTEL, acting jointly and severally as a result of the said defendants' violations pursuant to the Implied warranty of habitability, while acting together in concert.

## AS AND FOR THE THIRTEENTH CAUSE OF ACTION

253.    Plaintiff repeats and realleges each and every allegation as set forth above, as though same were fully stated hereinafter.

254.    As a direct result of the deception perpetrated by been injured and damaged in an amount to be determined by the Court after trial by defendants ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, ASHEL BEAR SHEVA LLC, COHEN LABARBERA, LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C.

LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C. upon

plaintiff herein, and to deter any such outrageous and morally culpable conduct and

behavior in the future, the aforesaid defendants should be adjudicated to

compensate plaintiff with treble damages.

## AS AND FOR THE FOURTEENTH CAUSE OF ACTION

255.   As a direct result of the mby defendants ABRAHAM JOSEPH,

NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ

ACRES, LLC, KYM LAD LLC, KY MOTEL, ASHEL BEAR SHEVA LLC,

COHEN LABARBERA, LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P.

LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH

KUNSTLINGER, JOSEPH KUNSTLINGER P.C. upon plaintiff herein, the

Plaintiff herein is entitled to punitive damages.

## AS AND FOR THE FIFTEENTH CAUSE OF ACTION

1.   Plaintiff repeats and realleges each and every allegation as set forth

above, as though same were fully stated hereinafter.

256. As a direct result of the mby defendants ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, ASHEL BEAR SHEVA LLC, COHEN LABARBERA, LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C. upon plaintiff herein, the Plaintiff herein is entitled to punitive damages.

WHEREFORE, for all the reasons set forth hereinabove Plaintiff seeks damages against defendants for each and every cause of action stated hereinabove as this Honorable Court shall determine against the herein RICO defendants; and seeks injunctive relief against Judge Steven Milligram as this Court sees just and proper; and for any other relief that his Court deems just and proper.

Dated: September 19, 2014

_____
YITSCHAK GOLDSTEIN
131 Acres Road
Unit 201
Kiryas Joel
Monroe, New York 10950
(845) 783-4480

256. As a direct result of the mby defendants ABRAHAM JOSEPH, NUCHEM FRIEDMAN, SIMAN TOV LLC, SIMAN TOV ASSOCIATES, KJ ACRES, LLC, KYM LAD LLC, KY MOTEL, ASHEL BEAR SHEVA LLC, COHEN LABARBERA, LANDRIGAN LLP, RONALD J. COHEN, STEPHEN P. LABARBERA, STUART THALBLUM, THOMAS C. LANDRIGAN, JOSEPH KUNSTLINGER, JOSEPH KUNSTLINGER P.C. upon plaintiff herein, the Plaintiff herein is entitled to punitive damages.

WHEREFORE, for all the reasons set forth hereinabove Plaintiff seeks damages against defendants for each and every cause of action stated hereinabove as this Honorable Court shall determine against the herein RICO defendants; and seeks injunctive relief against Judge Steven Milligram as this Court sees just and proper; and for any other relief that his Court deems just and proper.

Dated: September 19, 2014

_____
YITSCHAK GOLDSTEIN
131 Acres Road
Unit 201
Kiryas Joel
Monroe, New York 10950
(845) 783-4480

**Plaintiff**

YITSCHAK GOLDSTEIN

131Acres Road, Unit 201,

Monroe, NY 10950.

845-783-4480

**Defendants**

ABRAHAM JOSEPH

49 Keep Street,

Brooklyn, NY 11211

NOCHUM FRIEDMAN

82 Forest Road,

Monroe, NY 10950

SIMAN TOV ASSOCIATES,

50 Satmar Drive,

Monroe, NY 10950

SIMAN TOV LLC,

50 Satmar Drive,

Monroe, NY 10950

KJ ACRES LLC

82 Forest Road,

Monroe, NY 10950.

KYM LAD LLC

82 Forest Road,

Monroe, NY 10950.

KY MOTEL
11173 Ocotillo Road,
Desert Hot Springs,
California, 92240
and
Post Office Box 728,
Monroe, NY 10950

131 ACRES RD CONDOMINIUM
a/k/a 131 ACRES RD CONDO
82 Forest Road
Monroe, NY, 10950

JOSEPH  KUNSTLINGER
235 North Main Street, Suite 2,
Spring Valley, NY 10977-4014.

JOSEPH  KUNSTLINGER P.C.
235 North Main Street, Suite 2,
Spring Valley, NY 10977-4014.

STUART THALBLUM
40 Matthews Street, Suite 203,
Goshen, New York 10924.

RONALD J. COHEN
40 Matthews Street, Suite 203,
Goshen, New York 10924.

STEPHEN P. LABARBERA
40 Matthews Street, Suite 203,

Goshen, New York 10924.

THOMAS C. LANDRIGAN
40 Matthews Street, Suite 203,
Goshen, New York 10924.

COHEN, LABARBERA,
LANDRIGAN, LLP
40 Matthews Street, Suite 203,
Goshen, New York 10924.

STEVEN MILLIGRAM
One Corwin Court,
Newburgh, NY 12550.

ASHEL BEAR SHEVA LLC
P. O. Box 728
Monroe, New York, 10949

ATTORNEY GENERAL OF
THE STATE OF NEW YORK
120 Broadway,
New York, NY 10271

ABRAHAM SRUGO
131 Acres Rd. Unit 301
Monroe, NY 10950

YOSSI'S CAFE &
RESTAURANT INC.
131 Acres Rd. Unit 111
MONROE, NY 10950