UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YITSCHAK GOLDSTEIN,<br><br>                              Plaintiff,<br><br>    -against-<br><br>ABRAHAM JOSEPH, et al.,<br><br>                              Defendants. | No. 14-cv-4477 (NSR) |
| KJ ACRES LLC,<br><br>                              Petitioner,<br><br>    -against-<br><br>YITSCHAK GOLDSTEIN,<br><br>                              Respondent. | No. 14-cv-4479 (NSR) |
| YITSCHAK GOLDSTEIN,<br><br>                              Plaintiff,<br><br>    -against-<br><br>ABRAHAM JOSEPH, et al.,<br><br>                              Defendants. | No. 14-cv-4480 (NSR) |

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

This Opinion and Order concerns motions in three related actions: (1) a petition for eviction that KJ Acres LLC filed in the Town of Monroe Justice Court against Yitschak Goldstein, which Mr. Goldstein removed to this Court on June 20, 2014, captioned *KJ Acres*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/30/2015

*LLC v. Goldstein*, No. 14-cv-4479 (the "Summary Action"); (2) a civil complaint that Mr. Goldstein filed against KJ Acres LLC and numerous other defendants in New York Supreme Court, Orange County, which was removed to this Court on June 20, 2014, captioned *Goldstein v. Joseph*, No. 14-cv-4480 (the "Supreme Court Action"); and (3) another civil complaint that Mr. Goldstein filed against the same defendants and additional defendants in this Court on June 20, 2014, captioned *Goldstein v. Joseph*, No. 14-cv-4477 (the "Federal Action"). For simplicity, the Court will refer to Mr. Goldstein as "Plaintiff" (though he is technically the respondent in the Summary Action) and all other parties collectively as "Defendants" (though KJ Acres LLC is technically the petitioner in the Summary Action), except where the distinction is material.

Defendants in the Federal Action have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants have filed a separate motion requesting the following: (1) for the Court to issue a warrant of eviction in the Summary Action or to remand the Summary Action to the Town of Monroe Justice Court, and (2) for the Court to dismiss the Supreme Court Action pursuant to Rule 3211(1), (4), and (5) of the New York Civil Practice Law and Rules or to remand the Supreme Court Action to New York Supreme Court, Orange County. This latter motion was filed by Defendants in the Summary Action docket, No. 14-cv-4479, ECF No. 31 and the Supreme Court Action docket, No. 14-cv-4480, ECF No. 12. On September 12, 2014, the Court denied the motion in the Supreme Court Action without prejudice to permit Plaintiff to amend his complaint and terminated the motion from the docket, but Defendants never re-filed the motion on the Supreme Court Action docket. The Court deems the motion as properly filed in the dockets for both the Summary Action and Supreme Court Action. And, for the following reasons, Defendants' motion to dismiss in the Federal Action is

GRANTED and the motions in the Supreme Court Action and the Summary Action are GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The allegations in the Federal Action reflect the general subject matter of all three actions. Plaintiff's Amended Complaint in the Federal Action alleges that Defendants manipulated him into making improvements to an apartment unit, 131 Acres Road, Unit 201, Monroe, New York ("Unit 201"), and making payments toward the purchase of that unit, but ultimately depriving him of his rights to the property, or his interest in the property, or his option to purchase the property.

Plaintiff made two attempts to purchase Unit 201. Plaintiff first tried to purchase the unit in June 2004 for $250,000, pursuant to an oral arrangement with Defendant Joseph as follows: Plaintiff would put $4,000 down, make $50,000 in improvements, and pay the remaining balance of $196,000 in monthly installments of $1,400 at 4% interest per annum, and Joseph would transfer the deed before he moved in. From June to October 2004 Plaintiff allegedly spent $50,000 renovating Unit 201 and $1,500 on fixtures. (First Am. Compl. ¶ 62, No. 14-cv-4477, ECF No. 19 [hereinafter Am. Compl. (Fed.)].) In September 2004, Plaintiff allegedly paid the $4,000 down payment. Plaintiff alleges, however, that he "never received any written deed or other official evidence" concerning the arrangement. (*Id.* ¶ 60.) In October 2004, Defendant Friedman allegedly told Plaintiff that Unit 201 was not a legal condominium, but that it would be converted shortly and Plaintiff would receive title upon conversion. (*Id.* ¶ 65-68.) Plaintiff continued living at the premises and making payments until June 2008, when Friedman allegedly told Plaintiff that Friedman, himself, had purchased all ownership interests in Unit 201 from Defendant Joseph and that Friedman would evict Plaintiff if Plaintiff did not pay him $1,700 in

rent per month thereafter as a tenant.  (*Id.* ¶ 76.)  Plaintiff brought the matter to arbitration before a rabbinical court.  In September 2008, the rabbinical court found that Plaintiff was a tenant, not an owner.  (*Id.* ¶ 85.)

Plaintiff tried to purchase Unit 201 a second time in December 2008.  Plaintiff alleges that he signed a contract dated December 29, 2008 in which Friedman and Defendant Simon Tov LLC (Joseph's company) agreed to sell Unit 201 for $172,000, with (1) a 10% down payment due upon the N.Y. State Department of Law's issuance of a no-action letter with respect to the condominium plan for the unit and (2) the balance to be tendered in exchange for the deed at a closing to take place "on or about 75 days" from the contract date.  (*Id.* ¶¶ 93, 98; Thalblum Decl. Ex. 19, No. 14-cv-4479, ECF No. 33-22.)  Plaintiff alleges that Friedman snatched the contract out of Plaintiff's hands and never gave him a copy.  (Am. Compl. (Fed.) ¶¶ 100-01.)  Plaintiff alleges that he began making payments of $1,700 every month, which he believed went toward the purchase of Unit 201.  (*Id.* ¶¶ 102-04.)  In mid-2009, Friedman allegedly told Plaintiff that he had destroyed the December 29, 2008 contract, but that they would enter into another purchase contract in the future.  (*Id.* ¶ 128.)  Finally, in November 2011, Plaintiff learned that Unit 201 had been converted to a condominium and sold from Friedman and Simon Tov LLC (Joseph's company) to Defendant KJ Acres LLC (Friedman's company).  (*Id.* ¶ 130.)

In the Federal Action, Plaintiff claims this course of conduct constitutes a civil RICO violation under 18 U.S.C. § 1962, violations of 42 U.S.C. §§ 1983, 1985, and 1986, and violations of various New York statutes and doctrines.

## PROCEDURAL HISTORY

In March 2013, KJ Acres LLC filed an eviction petition in the Town of Monroe Justice Court captioned *KJ Acres LLC v. Goldstein*, No. 13100051 (N.Y. Justice Ct.) to re-take

possession of Unit 201 purportedly because of Plaintiff's failure to pay rent (i.e., the Summary Action). After multiple adjournments, the parties agreed to defer the Summary Action so that they could, once again, arbitrate Plaintiff's status before the rabbinical court as they had done in September 2008. (*Id.* ¶¶ 136-38.) On May 27, 2013, the rabbinical court affirmed its September 2008 ruling finding that Plaintiff was a tenant, not an owner. (*Id.*) The Summary Action was placed back on the calendar for a December 4, 2013 hearing date (after multiple adjournments).

Two days before the hearing, on December 2, 2013, Plaintiff filed an action in New York Supreme Court, Orange County, captioned *Goldstein v. Joseph*, No. 9597/2013 (N.Y. Sup. Ct.) (i.e., the Supreme Court Action). The Complaint in the Supreme Court Action alleges roughly the same course of conduct set forth in the Background section, *supra*, but asserts only state-law claims for damages and/or specific performance.

The eviction hearing in the Summary Action took place on December 4, 2013. At the hearing, the presiding Town Justice was poised to find for KJ Acres, but stated that in lieu of ordering a warrant of eviction immediately, the Court could so-order a settlement stipulation if it was agreeable to the parties. The parties entered into a stipulation on the record whereby Plaintiff was given until December 6, 2013 (i.e., two days) to make certain payments into escrow.

Plaintiff did not make the agreed payments, but instead filed for bankruptcy protection under Chapter 13 on the stipulated payment due date of December 6, 2013, *In re Goldstein*, No. 13-bk-37651 (Bankr. S.D.N.Y.) (the "Bankruptcy Action"). On May 21, 2014, the bankruptcy court lifted the automatic stay with respect to the Summary Action and the Supreme Court Action to permit the parties to litigate their claims in state court. Finally, on June 20, 2014, Plaintiff filed the Complaint in this Court captioned *Goldstein v. Joseph*, No. 14-cv-4477

5

(S.D.N.Y.) (i.e., the Federal Action) and removed the Summary Action and the Supreme Court Action to this Court on the basis of 28 U.S.C. §§ 1452(a) and 1334, under docket numbers 14-cv-4479 and 14-cv-4480, respectively.

## DISCUSSION

### I. The Federal Action Motion

*A. Standard on a Motion to Dismiss*

"[W]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Pressley v. Astrue*, No. 12 CIV. 8461 NSR PED, 2013 WL 3974094, at *2 (S.D.N.Y. Aug. 2, 2013) (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)). A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "*pro se* plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). The "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

"[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint." *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (citing *McCall v. Pataki*,

232 F.3d 321, 322 (2d Cir. 2000)).  Where a Rule 12(b)(6) motion is unopposed, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* at 322-23.  According to counsels' representations, Plaintiff was served with all papers related to the motion in the Federal Action on February 17, 2015.  As of the date of this Order, Plaintiff has not submitted opposition.  Accordingly, the Court will decide the motion on Defendants' submissions, in light of the Court's "reading of the pleading and knowledge of the law."  *Hass*, 497 F. Supp. 2d at 564.

    B.    *Analysis*

The Federal Action must be dismissed because all federal claims asserted in the Federal Action are untimely.  The longest statute of limitations on any of Plaintiff's federal claims is four years for Plaintiff's civil RICO claims.  *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987); *see also Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997) (three years for §§ 1983 and 1985, and by that logic, § 1986).  "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." *Burrowes v. Combs*, 124 F. App'x 70, 71 (2d Cir. 2005) (internal quotation marks omitted).  This action was filed on June 20, 2014.  Therefore, any RICO injuries that Plaintiff discovered or should have discovered prior to June 20, 2010 are time-barred.  Construing the Amended Complaint charitably, Plaintiff alleges two separate RICO injuries—one for each time his efforts to purchase Unit 201 failed or were foiled.[1]  Both injuries fall outside of the limitations period.

First, Plaintiff claims that he had an oral agreement to purchase Unit 201 in June 2004 and began making payments thereafter.  Plaintiff alleges that in June 2008, Friedman allegedly

---

[1] To be clear, the Court is not holding that this course of events amounts to a cognizable RICO injury.  On the contrary, were the Court to analyze the claims substantively, there would likely be substantial deficiencies.  The Court assumes a RICO injury for the sole purpose of evaluating the timeliness of Plaintiff's claims.

7

told Plaintiff that Friedman himself had purchased all ownership interests in Unit 201 and that Friedman would evict Plaintiff if Plaintiff did not pay him $1,700 in monthly rent as his tenant. Even construing all allegations in favor of Plaintiff and granting Plaintiff all reasonable inferences, as the Court must on a Rule 12(b)(6) motion, this act gave Plaintiff unambiguous notice that he did not have whatever ownership interest or option he thought he had in Unit 201. Accordingly, Plaintiff discovered the first alleged RICO injury in June 2008, outside of the limitations period (and this analysis ignores allegations showing that a reasonable person probably would have had notice earlier than June 2008, such as the lack of a deed or any other evidence of ownership for some years).

Second, Plaintiff claims that he had a written contract dated December 29, 2008, to purchase Unit 201, and began making payments thereafter. But the contract had a clause that stated that a closing must occur on or about 75 days after that date—i.e., on or about March 4, 2009. A reasonable person would have been on notice of the purported breach of contract shortly after that date. And even so, Plaintiff alleges that in mid-2009, Friedman told him that he had destroyed the December 29, 2008 contract. This is yet another act that gave Plaintiff unambiguous notice that he did not have whatever ownership interest or option he thought he had in Unit 201. Accordingly, Plaintiff should have discovered his second RICO injury shortly after March 4, 2009, or at the latest by "mid-2009," either of which is outside of the limitations period.

As the claims based on these injuries are untimely under RICO's four-year statute of limitations, they are likewise untimely under the three-year statutes of limitations for claims under 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff's RICO and §§ 1983, 1985, and 1986 claims must be dismissed, and because all of Plaintiff's federal claims are dismissed as untimely, the

Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. The Federal Action is dismissed in its entirety.

## II.     The Supreme Court Action and Summary Action Motions[2]

The Supreme Court Action and Summary Action must be remanded to the courts from which they were removed. On June 20, 2014, Plaintiff removed the Supreme Court Action and the Summary Action to this Court purportedly on the basis of 28 U.S.C. § 1452. Section 1452 provides for removal of actions to a district court *inter alia* if the action is "related to" a bankruptcy. *Id.*; 28 U.S.C. § 1334. However, a court must abstain from hearing a case premised on "related-to" jurisdiction if it falls under § 1334(c)(2). *See* 28 U.S.C. § 1334(c)(2). A court may also remand a § 1452 action in its discretion "on any equitable grounds." 28 U.S.C. § 1452(b). Here, remand is warranted under both mandatory and equitable (permissive) abstention.

### A.     *Mandatory Abstention*

The Court is required to abstain under 28 U.S.C. § 1334(c)(2) from hearing the Supreme Court Action and the Summary Action. A party seeking remand based on § 1334(c)(2) mandatory abstention must establish six elements: "(1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) § 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court." *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, No. 14 CIV. 2557 LGS, 2014 WL 5810629, at *6 (S.D.N.Y. Nov. 10, 2014). Defendants have met all

---

[2] As with the motion in the Federal Action, Defendants served all papers related to the motions in the Supreme Court Action and Summary Action on November 3, 2014, and Plaintiff has not submitted any opposition as of the date of this Order. The Court will decide these motions on Defendants' submissions in light of the Court's own reading of the pleading and knowledge of the law.

elements. The first five are easily met: the motion is timely; the Summary Action and the Supreme Court Action assert purely state-law claims; those claims are noncore to the Bankruptcy Action, i.e., though conceivably related to the Bankruptcy Action, the claims do not "arise in" the Bankruptcy Action or "arise under" the Bankruptcy Code[3]; § 1334 is the sole basis for federal jurisdiction[4]; and both actions were commenced in state court.[5]

The sixth and last element, whether the actions can be timely adjudicated in state court, is also met here. "Four factors come into play in evaluating 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 711 (S.D.N.Y. 2013). No evidence has been presented as to relative backlog. However, "the mandatory nature of abstention under § 1334(c)(2) as well as the principles of comity . . . presume that a state court will operate efficiently and effectively." *Id.* Moreover, with respect to the Summary Action, the action is a special summary proceeding in the Justice Court designed to be more efficient and speedier than

---

[3] The claims are noncore. "A proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012) (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-109 (2d Cir. 2006)). A claim is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." *Id.* (internal quotation marks omitted). In assessing whether contract claims are core or noncore, courts also consider "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *Id.* (internal quotation marks omitted). All claims in the Supreme Court Action, which allege pre-petition breaches of a pre-petition contract, are noncore. *Cf. In re Residential Capital, LLC*, No. 12-12020 MG, 2015 WL 739829, at *6 (S.D.N.Y. Feb. 20, 2015). The Summary Action, an eviction proceeding filed prepetition based entirely on prepetition conduct, is also noncore. *See In re Taub*, 417 B.R. 186, 196 (Bankr. E.D.N.Y. 2009)

[4] The parties are not diverse and there is no federal question jurisdiction.

[5] One may argue that no action is "commenced" in state court because both the Supreme Court Action and the Summary Action have been removed. The Second Circuit has rejected this argument. *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447 (2d Cir. 2005).

a federal proceeding.  *Cf. In re Taub*, 417 B.R. 186, 193 (Bankr. E.D.N.Y. 2009) (finding that New York City Housing Court summary proceedings are, by design, speedier than Bankruptcy Court for adjudicating landlord-tenant disputes because of the Housing Court's expertise, resources, and procedural efficiencies).  The state law issues are not particularly complex, but the respective state forums have arguably greater expertise than this Court, especially with respect to the landlord-tenant issues raised in the actions.  The status of the bankruptcy action weighs in favor of remand:  the Bankruptcy Court has lifted the automatic stay to permit the parties to litigate their claims in the respective state forums.  Finally, there is no indication that state proceedings would prolong the administration or liquidation of the bankrupt estate.  Conversely, the convenient timing of Plaintiff's Chapter 13 filing and notices of removal, coupled with his vast letter-writing campaigns and persistent requests for adjournments at every turn, suggest that Plaintiff's motives in removing the cases to this Court may have been dilatory.  For the foregoing reasons, § 1334(c)(2) mandates abstention.

> B.     *Equitable Abstention*

Even if § 1334(c)(2) did not mandate abstention, this case is a prime candidate for equitable abstention.  A court has "broad discretion in conducting the equitable remand analysis."  *CAMOFI Master LDC v. U.S. Coal Corp.*, 527 B.R. 138, 143 (Bankr. S.D.N.Y. 2015).  Courts consider seven factors in deciding whether to remand a case under § 1452(b):

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Stahl v. Stahl*, No. 03 CIV.0405 VM, 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003).  Here, the factors on balance weigh in favor of remand.

1.      The effect on the efficient administration of the bankruptcy estate

As to the Summary Action, allowing the prepetition eviction proceedings to proceed will have little to no effect on the administration of the bankruptcy estate. *Cf. In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) ("In a Chapter 7 case such as this, the landlord's desire to continue a pre-petition eviction proceeding usually has no discernable impact on the bankruptcy case."). As to the Supreme Court Action, the only impact that the claims may have on Plaintiff's Bankruptcy Action is that if Plaintiff's claims are successful, the bankruptcy estate may be augmented. However, there is no indication that remanding the Supreme Court Action will affect administration. Remand would not abdicate any bankruptcy function to the state forums; rather the "proceedings [in the state forums] may fix the claims and obligations of the parties, which then may be administered in" the Bankruptcy Action. *In re Taub*, 417 B.R. 186, 193 (Bankr. E.D.N.Y. 2009).

2.      The extent to which issues of state law predominate

The issues raised in both actions are pure state law. Although this does not mandate abstention, it does weigh in favor of abstention. *Stahl*, 2003 WL 22595288, at *3 ("[Al]though the predominance of state law issues in a case does not alone require remand, it does not mean that that consideration, in combination with others, could not usually tilt in favor of remand.").

3.      The difficulty or unsettled nature of the applicable state law

The state law issues involved in the claims are not obviously complex or unsettled. The Court notes, however, that the parties in the Summary Action entered into a stipulation on the record facially disposing of the Summary Action. This stipulation was so-ordered by the Justice Court, and Plaintiff has expressed his intention to move to vacate the stipulation. The Justice Court that so-ordered the stipulation is in the best position to assess its effect. This weighs somewhat in favor of remand, but only with respect to the Summary Action.

4. <u>Comity</u>

Comity weighs strongly in favor of remand because both cases raise issues of property law and landlord-tenant law involving New York domiciles and real property located in New York. *Cf. In re River Ctr. Holdings, LLC*, 288 B.R. 59, 70 (Bankr. S.D.N.Y. 2003) ("[T]his case should be contrasted with situations where New York law must be applied by reason of a strong state or local interest in regulating the matter in controversy—as it might, for example, in connection with landlord-tenant matters in the City or State of New York.")

5. <u>The degree of relatedness or remoteness of the proceeding to the main bankruptcy case</u>

This factor tilts both ways. The claims in the Supreme Court Action and the Summary Action are related to the bankruptcy action insofar as Plaintiff's ability to marshal assets is central to his Chapter 13 case. On the other hand, the respective state forums may fix the rights and obligations of the parties, which may then be administered in the Chapter 13 case. *Cf. In re Taub*, 417 B.R. at 195. "Something more than a mere effect on the size and administration of the bankruptcy estate must be involved for the fifth remand factor to weigh against remand." *Stahl*, 2003 WL 22595288, at *3. Applying this principle, this Court in *Stahl* found that this factor was neutral even though the claims in the nonbankruptcy case had the potential to significantly affect the size of the bankrupt estate. *Id.* This contrasts with cases in which the court has found that the claims are highly related to the bankruptcy case, such as *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, in which the claims at issue were that the defendants had caused the debtor to delay filing for bankruptcy and depleted his assets, and were inextricably tied to creditors' proofs of claims, 277 B.R. 5, 16-17 (S.D.N.Y. 2002). Not so here. This factor is neutral.

      6.      <u>The existence of the right to a jury trial</u>

The right to a jury trial is neutral with respect to the Supreme Court Action.  It weighs somewhat against remand with respect to the Summary Action.

      7.      <u>Prejudice to the involuntarily removed defendants</u>

The prejudice to defendants weighs somewhat in favor of remand with respect to the Supreme Court Action and strongly in favor of remand with respect to the Summary Action.  As noted above, Plaintiff's litigation tactics, despite his *pro se* status, suggest a dilatory motive in removing these actions.  Moreover, with respect to the Summary Action, Defendants filed their eviction proceeding in Justice Court, which affords landlords a summary procedure for routine evictions.  Permitting Plaintiff to bring the eviction proceeding into this court would rob Defendants of the efficiencies that the summary proceeding seeks to afford.

The balance of factors weighs in favor of remanding both actions.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Federal Action is GRANTED and the Federal Action is DISMISSED.

Defendants' motions with respect to the Supreme Court Action and the Summary Action are GRANTED in part and DENIED in part, insofar as the Summary Action (14-cv-4479) is REMANDED to the Town of Monroe Justice Court from which it was removed, and the Supreme Court Action (14-cv-4480) is REMANDED to the Supreme Court of the State of New York, Orange County, from which it was removed.

The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 69 and 72 of Docket No. 14-cv-4477 and ECF No. 31 of Docket No. 14-cv-4479, to close Docket No.

14-cv-4477, and to remand Docket Nos. 14-cv-4479 and 14-cv-4480 in accordance with this Order.

Dated: June 30, 2015
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge